UNITED STATES COURT OF FEDERAL CLAIMS

(E-field: July 25, 2007)

| | |
|---|---|
| SCHOONER HARBOR VENTURES, INC., Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant. | No. 06-87 L<br>Honorable Marian Blank Horn |

**JOINT STIPULATION OF FACTS**

Pursuant to the Court's Order entered June 8, 2007, the parties, Plaintiff Schooner Harbor Ventures, Inc. and Defendant, United States of America, hereby submit this Joint Stipulation of Facts accompanied by a Joint Appendix.

1. The Mississippi sandhill crane was listed as a subspecies of the sandhill crane in 1972 and was added to the United States' List of Endangered Fish and Wildlife on June 4, 1973. See 38 Fed. Reg. 14678 (June 4, 1973) included in the Joint Appendix ("JA") at Tab 26, p. JA 0166; see also JA Tab 1, p. JA 0005.

2. The Mississippi sandhill crane is a nonmigratory endangered subspecies. JA Tab 1, p. JA 0005; see also JA Tab 1, p. JA 0007.

3. Savannas are among the habitat of the Mississippi sandhill crane, and cranes will roost in savannas, edges of wooded depressions of swamps, and ponds. JA Tab 1, p. JA 0006.

4. In 1974, the Nature Conservancy purchased 1,709 acres, which the United States Fish and Wildlife Service ("FWS") acquired in 1975 to establish the Mississippi Sandhill Crane National Wildlife Refuge ("MSCNWR" or "Refuge"). JA Tab 1, p. JA 0005.

5. Additional acreage has since been acquired such that the current total acreage of the Refuge is 19,273 acres, an addition of 17,564 acres. JA Tab 1, p. JA 0005.

6. The Mississippi Sandhill Crane National Wildlife Refuge's ("MSCNWR" or "Refuge") objectives include providing protection and management for the crane, protecting and preserving unique wetpine savanna communities, and providing environmental education, interpretation, and wildlife-oriented recreation. JA Tab 28, pp. JA 0171-172.

7. On July 29, 1977, critical habitat for the Mississippi sandhill crane was designated. The rule was published in the Federal Register on August 8, 1977. <u>See</u> 42 Fed. Reg. 39985 (August 8, 1977) included in the JA at Tab 27, pp. JA 0167-0170.

8. The property at issue in this lawsuit is located within the boundaries of the 1977 designation of critical habitat. <u>See</u> 42 Fed. Reg. 39985 (August 8, 1977), JA Tab 27, pp. JA 0169-0170.

9. In 1998, Plaintiff Schooner Harbor Ventures, Inc. entered into an option contract to purchase approximately 82 acres of property located on Highway 57 and north of Interstate 10 in Jackson County, Mississippi, from Alicia Swiney Pearce, as conservator on behalf of Henry Meyers. JA Tab 2, p. JA 0024.

10 Plaintiff planned to market the property as an industrial park. JA Tab 2, p. JA 0024.

11. Plaintiff showed its plan to the economic director for Jackson County and received little response. JA Tab 2, p. JA 0024.

12. In April 1999, plaintiff entered into a contract with a number of contingencies to sell the property it planned to purchase from Ms. Pearce to Kelly Singleton, who planned to develop the property. JA Tab 2, pp. JA 0024-0026.

13. Singleton, in turn, contracted with another developer, The Bryan Company. JA Tab 2, pp. JA 0024-0026.

14. Plaintiff and Singleton never consummated their contract. JA Tab 2, pp. JA 0025-0026.

15. Plaintiff sued Kelly Singleton in state court on January 23, 2001, to void the contract for sale or, alternatively, to seek specific performance requiring that Singleton purchase the property. See JA Tab 3, pp. JA 0035-0041.

16. On January 6, 2000, plaintiff exercised its option and purchased approximately 82 acres of property located on Highway 57 and north of Interstate 10 in Jackson County, Mississippi, ("original purchase") from Alicia Swiney Pearce, as conservator on behalf of Henry Meyers. JA Tab 4, pp. JA 0042, Pl.'s Response to Requests for Admission No 1.

17. The unsigned HUD settlement statement indicates Plaintiff paid $963,802.51 for the property it purchased from Alicia Swiney Pearce, as conservator on behalf of Henry Meyers. See JA Tab 32, pp. JA 0177-0179.

18. The property plaintiff purchased from Alicia Swiney Pearce, as conservator on behalf of Henry Meyers, is adjacent to the Mississippi Sandhill Crane National Wildlife Refuge ("MSCNWR" or "Refuge"). JA Tab 1, p. JA 0004.

19. The Mississippi Sandhill Crane National Wildlife Refuge ("MSCNWR" or "Refuge") is located in Gautier, Mississippi. See JA Tab 10, p. JA 0087.

20. Plaintiff did not consult the United States Fish and Wildlife Service ("FWS") prior to purchasing the property from Alicia Swiney Pearce. See JA Tab 4, p. JA 0043, Pl.'s Response to Requests for Admission No. 6; see also JA Tab 24, p. JA 0159, Pl.'s Answer to Interrogatory No. 15.

21. Plaintiff has never applied to the FWS for an incidental take permit in accordance with Section 10 (16 U.S.C.A. §1539) of the Endangered Species Act ("ESA") of 1973 as amended, regarding the property at issue in this lawsuit. see JA Tab 24, p. JA 0159, Pl.'s Answer to Interrogatory No. 15.

22. Plaintiff did not, at any time prior to learning the Navy was interested in purchasing the property that is the subject of this lawsuit, contact the FWS to ascertain whether any proposed development or alterations to the property would impact any federally listed species. Id.

23. On August 8, 2000, Plaintiff sold approximately 3.03 acres of its original 82 acre purchase to Landall, LLC for $150,000.00. JA Tab 4, p. JA 0042, Pl.'s Response to Requests for Admission No. 3.

24. On July 17, 2000, Plaintiff sold approximately 3.12 acres of its original 82 acre purchase to BPI enterprises, Inc. for $180,000.00. JA Tab 4, p. JA 0042, Pl.'s Response to Requests for Admission No. 4.

25. On August 8, 2000, Plaintiff sold approximately 2 acres of its original 82 acre purchase to Allen L. Brislin for $100,000.00. JA Tab 4, p. JA 0043, Pl.'s Response to Requests for Admission No. 5.

26. These parcels were commercially developed. JA Tab 5, p. JA 0073.

27. The sale on August 8, 2000, left plaintiff with approximately 74.64 acres of property, which is the subject of plaintiff's Complaint. See JA Tab 4, pp. JA 0042-0044, Pl.'s Response to Requests for Admission Nos. 1, 3-5.

28. Plaintiff sold the 74.64 acres remaining from its original 82 acre purchase to the United States for $1,900,000.00 in April 2002. JA Tab 4, p. JA 0043, Pl.'s Response to Requests for Admission No. 8.

29. From late 2000 through March 2001, the United States Department of the Navy ("Navy") began identifying undeveloped properties, also referred to as "sites", in Jackson County, Mississippi, that would be suitable to construct approximately 188 housing units to house Navy personnel and dependants assigned to Naval Station Pascagoula ("NS Pascagoula"). See JA Tab 18, p. JA 0134; see also JA Tab 5, pp. JA 0055-0056.

30. The Navy identified potential sites by utilizing resources such as newspaper advertisements, local realtors, Navy personnel, and local private entities. JA Tab 5, p. JA 0061.

31. More than 30 sites were identified through this process, 29 of which were evaluated to some degree. JA Tab 5, p. JA 0062.

32. After the sites were identified, the Navy evaluated each site based on criteria such as travel time to NS Pascagoula, available acreage, water and sewer availability, cost feasibility, and compatibility with community codes. JA Tab 5, pp. JA 0062-0064.

33. This process resulted in the Navy eliminating from further consideration all but five sites. The property at issue in this lawsuit, referred to as "Site 28" by the Navy, was among the five remaining sites. JA Tab 5, pp. JA 0073-0078.

34. The Navy documented the identification and evaluation process of the prospective sites in its Final Planning Study to Identify Potential Sites for 188 Housing Units Naval Station Pascagoula, Jackson County, Mississippi ("final planning study"). See JA Tab 5.

35. On January 31, 2001, the Navy's contractor, Ecology and Environment ("E&E"), wrote the FWS Daphne, Alabama, Ecological Services field office a letter informing FWS that the Navy was preparing an Environmental Assessment for the proposed housing project as part of its compliance with the National Environmental Policy Act ("NEPA"). See JA Tab 6, p. JA 0079.

36. The January 31, 2001, letter sought input from FWS regarding any issues or concerns it may have with the five sites the Navy was considering for its housing project. See JA Tab 6, pp. JA 0079-80.

37. By letter dated February 7, 2001, the Refuge responded to E&E's January 31st letter and informed E&E that Sites 8 and 28 were close to and "may result in some impact to the Refuge." JA Tab 7, p. JA 0081.

38. In its February 7th letter, the Refuge requested additional information from E&E regarding Sites 8 and 28 if the two sites were being seriously considered by the Navy for its housing development. Id.

39. On February 20, 2001, the FWS Daphne, Alabama, Ecological Services field office wrote E&E a letter and provided a list of species that may occur on four of the five sites being considered. JA Tab 8, pp. JA 0082-0084.

40. The Mississippi sandhill crane was not included in the February 20, 2001, letter. JA Tab 8, pp. JA 0082-0084.

41. In March 2001, the Navy published its final planning study identifying Site 28 as among the five potential sites being seriously considered for its housing development. See JA

Tab 5.

42. On April 4, 2001, the FWS Daphne, Alabama field office wrote E&E a letter providing additional information and the Refuge's concerns regarding Sites 8, 28, and 29. JA Tab 9, pp. JA 0085-0086.

43. In the April 4, 2001, letter, the FWS Daphne, Alabama, Ecological Services field office informed E&E that the Mississippi sandhill crane is a "highly endangered" species and expressed concern that the housing project, if located on either Site 8, 28, or 29, could impact the crane, its habitat, and/or the Refuge. JA Tab 9, p. JA 0085.

44. In the April 4, 2001, letter, the FWS Daphne, Alabama, Ecological Services field office noted the Mississippi sandhill crane's historic usage of Site 28, including nesting and foraging, and the impact that would result to the crane were the housing project built on Site 28. JA Tab 9, pp. JA 0085-0086.

45. Given these types of impacts, FWS recommended in the April 4, 2001, letter that the Navy "seriously consider avoidance of these three sites," i.e., Sites 8, 28, and 29. JA Tab 9, p. JA 0086.

46. On April 25, 2001, the Refuge wrote a letter to the Navy and provided additional information regarding the impacts to Sites 8 and 28. JA Tab 10, p. JA 0087.

47. In the April 25, 2001, letter, the Refuge informed the Navy that Site 28 was within the Mississippi sandhill crane's designated critical habitat and that 45 acres of prime habitat would be lost to the housing development. Id.

48. As indicated in the April 25, 2001, letter, the Refuge would require a 30 ft fence, 2:1 replacement habitat for crane foraging, and an 8 foot fence at the edge of the property if

the Navy were to select Site 28 for its housing development. Id.

49. The FWS Daphne, Alabama, Ecological Services field office wrote a letter to the Navy on August 3, 2001, and informed the Navy of a June 27th meeting with plaintiff concerning the purchase of offsite lands. The letter further explored the possibility of the acquisition of an offsite parcel to offset the impact to the Mississippi sandhill crane caused by the Navy's proposed housing development. JA Tab 11, pp. JA 0088-0096.

50. In the August 3, 2001, letter, FWS listed seven potential offsite parcels as options, in addition to on site (Site 28) requirements, such as a setback and chain link fence between the proposed development and the Refuge, to offset impacts to the Mississippi sandhill crane. JA Tab 11, p. JA 0091.

51. In the August 3, 2001, letter, FWS informed the Navy that a "may affect" situation existed within the meaning of Section 7 of the ESA as to Site 28. As a result of the "may affect" situation, FWS recommended the Navy request formal consultation with FWS on developing Site 28. JA Tab 11, p. JA 0092.

52. The Navy contacted FWS by letter dated August 20, 2001, and requested formal section 7 consultation for Site 28. JA Tab 12, p. JA 0097.

53. On August 29, 2001, plaintiff, Rena Ford, and Lamar Criswell entered into an option contract for purchase of an offsite parcel. JA Tab 13, p. JA 0098-0106.

54. The option contract set forth that Rena Ford agreed to exchange 77 acres of land ("Ford tract") with Lamar Criswell "in accordance with Section 1031 of the Internal Revenue code, so as to incur no tax liability or expense on her part." JA Tab 13, p. JA 0099; see also JA Tab 31, p. JA 0176.

55. Lamar Criswell agreed to exchange his property with Rena Ford, so that Lamar Criswell "may, in turn make a conveyance to Mississippi Sandhill Crane National Wildlife Refuge, for the consideration of $300,000.00" to be paid by plaintiff should plaintiff choose to exercise the option. JA Tab 13, pp. JA 0099-0100; see also JA Tab 31, p. JA 0176.

56. On September 20, 2001, the FWS Daphne, Alabama field office wrote the Navy a letter confirming initiation of the formal consultation process. JA Tab 14, pp. JA 0107-0108.

57. By letter dated January 15, 2002, FWS requested a 30 day extension from the Navy to provide the Biological Opinion ("BO"). JA Tab 15, p. JA 0109.

58. Plaintiff contacted the Navy by letter dated January 17, 2002, and informed the Navy that plaintiff "is still very much interested in the sale" of Site 28 to the Navy for $1.9 million. JA Tab 16, pp. JA 0111.

59. By letter dated January 17, 2002, plaintiff notified the Navy that its option to purchase offsite property expired on February 29, 2002. Id.

60. On February 12, 2002, FWS issued its Biological Opinion ("BO") reviewing the impacts of the Navy's proposed housing development on Site 28 to the Mississippi sandhill crane. See JA Tab 1, pp. JA 0001-0019.

61. In April 2002, the Navy published its Final Environmental Assessment for the Proposed Construction of 188 Family Housing Units at Naval Station Pascagoula, Pascagoula, Mississippi, which selected Site 28 as the preferred site for its housing development. See JA Tab 18.

62. On April 10, 2002, the Navy issued its Finding of No Significant Impact ("FONSI") for the Proposed Construction of 188 Family Housing Units at Naval Station Pascagoula, Pascagoula, Jackson County, Mississippi. See JA Tab 17, pp. JA 0112-0116.

63. On April 17, 2002, the Navy executed an Agreement for Purchase of Real Property ("Agreement"), previously executed by plaintiff on April 15, 2002. See JA Tab 19, pp. JA 0135-0141.

64. Per the Agreement for Purchase of Real Property ("Agreement"), plaintiff, as vendor, agreed to sell the subject property to the United States for $1,900,000.00. JA Tab 19, p. JA 0135.

65. The Agreement for Purchase of Real Property ("Agreement") stated, "[T]he vendor additionally agrees, as part of the aforementioned $1,900,000.00 consideration, to convey to the U.S. Department of the Interior Fish and Wildlife Service (Service) a separate parcel of land to offset the impacts caused by the Navy's construction of its housing development in designated critical habitat for the Mississippi sandhill crane." Id.

66. Plaintiff transferred the property at issue in this lawsuit, approximately 74.64 acres also known as Site 28, to the United States through the Navy by warranty deed on May 3, 2002. JA Tab 20, pp. JA 0142-0149.

67. On May 3, 2002, Plaintiff paid Lamar Criswell $300,000 in order to secure Mr. Criswell's transfer of 77 acres of property to the United States Fish and Wildlife Service ("FWS") pursuant to the option contract entered into by Plaintiff, Rena Ford, and Lamar Criswell. JA Tab 23, p. JA 0153, Pl.'s Response to Defendant's Request for Admission No. 9; see also JA Tab 31, p. JA 0176; JA Tab 13.

68. On May 3, 2002, Lamar Criswell transferred 77 acres of property to the United States "for the use and benefit of the U.S. Fish and Wildlife Service of the Department of the Interior," pursuant to the option contract entered into by Plaintiff, Rena Ford, and Lamar Criswell. JA Tab 21, pp. JA 0150-0151; see also JA Tab 31, p. JA 0176; JA Tab 13.

69. In connection with Mr. Criswell's transfer of property to the FWS, Plaintiff expended the following sums: $10,500 to Jim Horne to negotiate purchase of the property to be donated to FWS, $2,000 finder's fee to John M. "Cappy" Ford, and $1906.65 in closing costs. JA Tab 25, pp. JA 0163-0165; see also JA Tab 23, p. JA 0153-0155, Plt's Response to Defendant's Request for Admission Nos. 10, 12.

70. Plaintiff subsequently executed a Release of Deed of Trust regarding the property at issue in this lawsuit, approximately 74.64 acres also known as Site 28, to the United States on May 6, 2002. JA Tab 22, p. JA 0152.

71. Around April 2002, when Plaintiff sold approximately 74.64 acres of its original purchase of approximately 82 acres located in Jackson County, Mississippi, to the United States, the outstanding loan related to the property was approximately $854,782.96. JA Tab 23, p. JA 0153, Pl.'s Response to Requests for Admission No. 11.

72. The Navy subsequently developed Site 28.

73. On July 9, 2001, plaintiff wrote to the Navy regarding the Navy's proposed development of the property at issue in this lawsuit. The parties stipulate to the authenticity of the letter. JA Tab 30, p. JA 0175.

74. On March 28, 2002, plaintiff wrote to Mr. Beau Gex, District Chief of Staff to Congressman Gene Taylor, informing Mr. Gex of occurrences regarding Site 28. The parties stipulate to the authenticity of the letter. JA Tab 29, p. JA 0173-0174.

Respectfully submitted: July 25, 2007

/s/ William Lee Guice III
WILLIAM LEE GUICE III
RUSHING & GUICE, P.L.L.C.
P. O. BOX 1925
BILOXI, MS 39533-1925
228-875-5263 VOICE
228-875-5987 FAX
bguice@rushing-guice.com

Attorney of Record for Plaintiff

s/ Kelle S. Acock
KELLE S. ACOCK
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0428
Fax: 202-305-0267
Email: kelle.acock@usdoj.gov

Attorney of Record for Defendant