# TAB NO. 6

01-0763 RECEIVED
FEB 06 2001

LG
PH-
log

**ecology and environment, inc.**
International Specialists in the Environment
220 West Garden Street, Suite 404
Pensacola, FL 32501
Tel: (850) 435-8925, Fax: (850) 435-9135

January 31, 2001

Mr. Larry Goldman
Supervisor, U.S. Fish and Wildlife Service
1208-B Main St.
P.O. Drawer 1190
Daphne, AL 36526

Re: Environmental Assessment for the Construction of 188 Family Housing Units at Naval Station Pascagoula, Mississippi

Dear Mr. Larry Goldman :

Ecology and Environment, Inc. (E & E) is preparing an Environmental Assessment (EA) for the proposed construction of 188 family housing units assigned to Naval Station Pascagoula, Mississippi. The EA will be prepared to comply with the National Environmental Policy Act of 1969 (NEPA).

The new housing would be multi-family housing units, wood or metal frame, or masonry with stucco or vinyl siding, covered parking, covered patios, privacy fencing, exterior storage, and recreational facilities. Five potential sites have been identified for the location of the family housing. Four of the sites are in the Pascagoula community and the fifth site is on Singing River Island, adjacent to Naval Station Pascagoula (see attached map). These sites were identified methodically through a Preliminary Planning Study (PPS) completed by E & E in January 2001.

E & E will be collecting and analyzing existing environmental and socioeconomic data as well as identifying potential impacts that may occur as a result of this proposed action.

The purpose of this letter is to solicit any expressed issues or concerns your agency may have regarding the proposed action, and to inquire as to the appropriate point of contact for consultation during the development of this EA. If you require clarification or additional information, please contact me at (850) 574-1400 or by e-mail at dhelter@enc.com. Thank you in advance for your prompt attention to this matter

Sincerely,
Ecology & Environment, Inc.

David Helter, AICP
Project Manager

Enclosure

Patric - I agree with [illegible] that we need to take this. Please prepare a response.
L.

LG

recycled paper

US00118




Locations of Selected Sites

US00119

# TAB NO. 7

United States Department of the Interior

TAKE PRIDE IN AMERICA

FISH AND WILDLIFE SERVICE
Mississippi Sandhill Crane National Wildlife Refuge
7200 Crane Lane
Gautier, MS 39553

February 7, 2001

Mr David Helter
Ecology and Environment
220 West Garden Street, Suite 404
Pensacola, FL 32501

Dear Mr. Helter:

This is in response to your letter dated January 31, 2001, pertaining to the construction of 188 family housing units for Naval Station Pascagoula. You stated that an Environmental Assessment was being prepared and you were soliciting comments regarding the concerns of the refuge about this housing project.

(also site 29)

The letter and map provided was limited in terms of construction details identifying and describing specific project locations. Of the five potential sites shown on your map, sites 8 and 28 are close to and may result in some impact on the refuge. If these two locations are being seriously considered, please send more detailed information about these sites and the proposed work. Once we have this information, we will provide you with comments from the Mississippi Sandhill Crane National Wildlife Refuge.

If you have any questions, call Tom Thornhill at 1-228-497-6322-ext.23, Fax 1-228-497-5407 or E-mail (tom thornhill@fws.gov).

Sincerely yours,

Thomas D. Thornhill

Thomas D. Thornhill
Assistant Refuge Manager

US00120

# TAB NO. 8

United States Department of the Interior

FISH AND WILDLIFE SERVICE
P. O. Drawer 1190
Daphne, Alabama 36526

IN REPLY REFER TO:
01-0763a

February 20, 2001

Mr. David Helter, AICP
Ecology and Environment, Inc.
220 W. Garden St., Suite 404
Pensacola, FL 32501

Dear Mr. Helter:

Thank you for your letter, dated January 31, 2001, requesting information for your preparation of an Environmental Assessment for the proposed construction of 188 family housing units assigned to Naval Station Pascagoula, Jackson County, Mississippi. Five potential sites have been identified, four west of Pascagoula and one on Singing River Island, adjacent to the Naval Station. We have reviewed the information you enclosed and are providing the following comments in accordance with the the Fish and Wildlife Coordination Act (48 Stat. 401, as amended; 16 U.S.C. et seq.) and the Endangered Species Act of 1973 (87 Stat. 884, as amended; 16 U.S.C. 1531 et seq.).

A. Fish and Wildlife Coordination Act

We do not expect the proposed action to result in significant adverse impacts to non-endangered fish and wildlife resources provided wetland, beach, intertidal, subtidal, and Essential Fish Habitats (EFH) are avoided during construction of the proposed project and that Best Management Practices are implemented, as appropriate, during construction to reduce potential erosion in the project area and siltation of aquatic habitats.

B. Endangered Species Act

We have determined that the following Federally listed species may occur in the first four project areas:

1. Red-cockaded woodpecker (*Picoides borealis*) E.

If suitable nesting habitat (containing pine trees greater than 60 years old) may be impacted by the project, then surveys should be conducted to determine the presence or absence of this

PHONE: 334-441-5181 www.fws.gov FAX: 334-441-6222
SHIPPING ADDRESS: 1208-B Main Street, Daphne, AL 36526

woodpecker species. If pine trees of this age will not be affected, then surveys for this species are not necessary. Surveys should be conducted by qualified biologists familiar with the species.

2. Bald eagle (*Haliaeetus leucocephalus*) T.

Potential bald eagle nesting habitat includes large trees, often near river systems, lakes, bays and other bodies of water. Nests are usually located near the tops of the tallest trees and are added to and reused year after year. If potential habitat for this species may be affected by your project, we recommend that surveys be conducted by qualified biologists to determine if this federally protected species occurs in the impact area. If no suitable habitat for this species occurs in the project area, then surveys are not necessary.

3. Gopher tortoise (*Gopherus polyphemus*) T.

The gopher tortoise is a burrowing terrestrial reptile. This species is generally restricted to deep well-drained sandy soils in open forests or savannas of the extreme southeastern United States. It is commonly associated with pine forests (historically longleaf pine) having an open understory with grass and forb groundcover. Gopher tortoises are also often found in association with pipeline right-of-ways. The species is herbivorous (primarily herbs, berries and wiregrass) and highly colonial with burrows reported more than 25 feet long. Nesting occurs primarily from May to July and between 3 and 11 eggs are buried usually near the burrow entrance. Thirty-nine invertebrate and 42 vertebrate species are known to utilize gopher tortoise shelter/breeding burrows to varying degrees, including the federally threatened eastern indigo snake.

We recommend that surveys for gopher tortoises and their burrows (active and inactive) be conducted if potential gopher tortoise habitat occurs within and for at least 100 yards outside of the project construction zone.

4. Eastern indigo snake (*Drymarchon corais couperi*) T.

The eastern indigo snake is a large, relatively slow, conspicuous, heavy-bodied snake attaining a length of about 7.5 feet. This species is often associated with the same xeric habitats that support gopher tortoise populations. We recommend that surveys for the eastern indigo snake be conducted if this habitat occurs within the project construction zone.

5. Louisiana quillwort (*Isoetes louisianensis*) E.

The Louisiana quillwort is a nonflowering grasslike plant that appears to be restricted to sandy soils and gravel bars in or near shallow blackwater streams and overflow channels in riparian woodland/bayhead forests of pine flatwoods and upland longleaf pine. Plants grow in stable sand and gravel bars and moist overflow channels with silty sand substrate, and on low, sloping banks near and below water levels. They occur in a relatively firm substrate of fine sandy loam, and sometimes coarser sands and small to medium-sized gravel. Mature plants are six to ten inches long, mostly evergreen, with spore-bearing structures below ground. During summer dry periods, plants may remain evergreen if growing in water, or wither and die back if growing in areas such as overflow channels that become dry if located at a distance from the main channel. Therefore, it may not be possible to conclude that a particular stream does not have quillworts if one is searching during the hotter and drier summer months. We recommend that surveys for the Louisiana quillwort be conducted by qualified botanists if this habitat occurs within the project impact zone.

At the Singing River site the following species may be affected, and therefore should be considered in your EA:

6. Piping plover *Charadrius melodus* T.
7. Brown pelican *Pelecanus occidentalis* E.
8. Loggerhead sea turtle *Caretta caretta* T.
9. Kemp's ridley *Lepidochelys kempii* E.
10. Green sea turtle *Chelonia mydas* T.

If you have any questions or need additional information, please contact Mr. Patric Harper at (334) 441-5181, ext. 34.

Sincerely,

Larry E. Goldman
Field Supervisor

US00056

# TAB NO. 9

# United States Department of the Interior

FISH AND WILDLIFE SERVICE
P.O. Drawer 1190
Daphne, Alabama 36526

IN REPLY REFER TO:
01-0763b

April 4, 2001

Mr. David Helter, AICP
Ecology and Environment, Inc.
220 W. Garden St., Suite 404
Pensacola, FL 32501

Dear Mr. Helter:

Based on additional information received from Mr. Richard Davis (U.S. Navy), and concerns of the Mississippi Sandhill Crane National Wildlife Refuge (Refuge), the U.S. Fish and Wildlife Service (Service) is providing additional concerns for your preparation of an Environmental Assessment for the proposed construction of 188 family housing units assigned to Naval Station Pascagoula, Jackson County, Mississippi. The Service believes that there may be potential adverse impacts resulting from the Navy's housing project on the highly endangered Mississippi sandhill crane (*Grus canadensis pulla*), its habitat and/or the Refuge.

The Mississippi sandhill crane is a subspecies that is highly endangered (only about 100 remain in the wild). This is primarily due to the significant loss of its preferred habitat which is pine savanna. It is therefore important that we carefully weigh actions such as your project to assure that further detriment to this species and/or its habitat does not occur. From the perspective of the crane, as stated in previous letters, we are not concerned with sites 7 and 31 as currently planned. However, other sites (28, 29, & 8) nearer the Refuge are of concern as reflected in the following points:

SITE 28- This is a 75 acre site along Highway 57 just west of the Coca-Cola plant savanna in the Refuge's Gautier Unit. There are 20 acres of wetlands on this site. The 10 acre pond at this location has been used for roosting habitat by the cranes for years. The peninsula in the pond was used for nesting territory for two years in late 1990s. The pasture has been used as foraging for years and probably decades. The location of housing here would have a definite impact on cranes due to the displacement of a nesting area, a foraging area, and a roosting area. Furthermore, disturbance from construction in the spring (March 1 - June 30) could disturb crane nesting. Also, the disturbance and trespass to the Refuge caused by housing occupants located to the east (Coca-Cola plant savanna) would impact crane foraging, and potentially adversely impact roosting and nesting. Although it has been recently proposed that the pond section could be "set-aside" for the cranes, we do not believe that this would be an adequate measure due to the cranes' requirement for an extensive buffer area (for foraging, nesting, loafing, roosting, etc.).

SITE-29-This site is located off Pt. aux Chenes and south of the Refuge's Fountainbleau Unit. Cranes are known to have used the north end of this site for foraging and loafing as determined via radio-telemetry in May-June 2000. The amount of crane use after this date is unknown since the crane that was previously radio tagged is no longer tagged. Construction at this site would not impact nesting behavior; however, it would displace a secondary feeding site for a breeding pair of cranes. In addition, human trespass onto the Fountainbleau Unit of the Refuge would likely increase and thus result in disturbance to crane activities.

SITE-8-This site is located in Gautier off the Martin Bluff Road. It consists of 45 acres of which 25 are classified as wetland. This site is about 1/3 mile southeast of a known core crane nest area and less than 150 yards from the edge of a foraging area. The proximity of a subdivision due south of this area is related to several instances of trespass onto the Refuge and into crane foraging and roosting areas. These factors may also be correlated with repeated failure of chicks to fledge from this territory.. In general the major impacts associated with this site are that construction during the spring (March 1 - June 30) would negatively affect nesting and the increased trespass incidents due to the volume of people associated with the housing unit would result in disturbance to cranes and habitat and likely contribute to nest failure.

As stated above, sites 28, 29, and 8 would likely have negative impacts on the cranes and/or their habitat. We are also concerned about secondary impacts of these projects on the Refuge. The information provided to date is not specific enough for us to assess impacts from other project features such as drainage onto or away from the refuge, lowering of the water table, etc. Given the potential adverse impacts we have addressed, it is recommend that the Navy seriously consider avoidance of these three sites.

If you have any questions or need additional information, please contact Patric Harper at (334) 441-5181, ext. 34 or the assistant refuge manager (Tom Thornhill) at (228) 497-6322, ext. 23.

Sincerely,

Larry E. Goldman
Field Supervisor

cc: Mr. Richard Davis, U.S. Navy
Mr. Tom Thornhill, USFWS, MSHCNWR

US00058

# TAB NO. 10

United States Department of the Interior

FISH AND WILDLIFE SERVICE
Mississippi Sandhill Crane National Wildlife Refuge
7200 Crane Lane
Gautier, MS, 39553

April 25, 2001

SOUTHNAVSACENGECOM
Attn: Code 064, Richard Davis
P.O. Box 190010
2155 Eagle Drive
North Charleston, SC 29419-9010

Dear Mr. Davis:

This letter is upon your request from the Mississippi Sandhill Crane National Wildlife Refuge to provide you with information regarding impacts to the refuge from Naval development of sites #28 and #8 in the Gautier, MS. area.

Site #28.

After looking at the site on foot, via air and map, refuge specialists believe that 45 acres of prime foraging habitat and one roosting/nesting site will be lost for use by the endangered Mississippi sandhill crane. All of the acres located in this site are considered "critical habitat" and are within the current acquisition boundary for the refuge. If the Navy were to choose this site for their housing units, the refuge would require these items:

1) 30 foot set back on east side of property to include the tree line. 2) 2:1 replacement of habitat for crane foraging. What this means is that for every critical habitat acre removed from the crane foraging base (in this case 45 acres), 2 acres would have to be purchased for replacement. The refuge biologist has identified several sites which would be suitable and desirable for the refuge to obtain since cranes currently, or have the potential to, use the area. 3) 8 foot fence at edge of property

We are sending realty information regarding suitable areas in the area adjacent to the refuge with this correspondence. Our preferred sites, corresponding to our faxed information, are numbers 3, 1, and 6. After these sites, any part of site 5 adjacent to the refuge.

Site #8

After looking at the site on foot, via air and map, the refuge biologist believes that only 1) a slight setback would be required (ie., 15 feet) from the fence line. No additional buffer is required and since the acres are not critical habitat, there is no requirement to replace lost acres. Currently, the cranes do not use the property. 2) 8 foot fence at edge of property.

If you have any additional questions, please do not hesitate to call. Thank you for your cooperation.

Sabrina S. Keen

Sabrina Keen
Refuge Manager
228-497-6322 ext. 29

cc: Lt. Fred Carter

US00121

# TAB NO. 11

# United States Department of the Interior

FISH AND WILDLIFE SERVICE
P. O. Drawer 1190
Daphne, Alabama 36526

IN REPLY REFER TO:
01-0763d

August 3, 2001

SOUTHNAVFACENGCOM
Attn: Code 0642RD, Richard Davis -
P.O. Box 190010
North Charleston, SC 29419-9010

Dear Sir:

Based on continuing informal consultation with the U.S. Navy (Navy) and the Mississippi Sandhill Crane National Wildlife Refuge (Refuge), the U.S. Fish and Wildlife Service (Service) is providing additional information for your use in preparing an Environmental Assessment for the proposed construction of a 188 family housing unit assigned to Naval Station Pascagoula, Jackson County, Mississippi as it relates to the Endangered Species Act of 1973 (87 Stat. 884, as amended; 16 U.S.C. 1531 et seq.).

Background:

In February 2001, it came to the attention of Refuge management that the Navy (Pascagoula Station) was looking at, among others, a site identified as "Site 28" located north of Interstate 10 on Highway 57 in Jackson County, Mississippi, to build a large housing development. This location, highly suitable for the proposed housing unit, is in critical habitat designated for the endangered Mississippi sandhill crane (*Grus canadensis pulla*). The site, situated between the Refuge's "Ocean Springs" and "Gautier" management units, encompasses 75 acres, of which 20 acres are delineated jurisdictional wetlands and 55 are considered upland. Of the 55 upland acres, 45 acres are prime foraging habitat for the endangered crane. A 10 acre pond at this location has been used for roosting habitat by the cranes for many years. Documented observations reveal that a peninsula in the pond was used for nesting as recently as the late 1990s and is quite probably still being utilized for nesting. The adjacent, onsite pasture has been used by cranes as foraging habitat for many years. The location of any development at this site would have a definite impact on cranes due to the displacement of nesting, foraging, and roosting areas. Also, disturbance and trespass onto the neighboring Refuge by housing occupants could impact crane foraging, as well as roosting and nesting activities. In a letter dated April 4, 2001, the Service stated that there may be potential adverse impacts to the crane, its habitat and/or the Refuge resulting from the Navy's housing project. We recommended that the Navy consider avoidance of this particular site.

PHONE: 334-441-5181 www.fws.gov FAX: 334-441-6222
SHIPPING ADDRESS: 1208-B Main Street, Daphne, AL 36526

On June 27, 2001 Messrs. Steven Carter and Lawrence Rumsey, owners of Site 28, approached the Refuge Manager to propose the purchase of offsite lands which they could include in their sale package to the Navy in order to offset impacts caused by the project to designated critical habitat on Site 28. At that time, Messrs. Carter and Rumsey were given information on selected locations which the Refuge had identified as high priority sites to acquire for protection, based on current, or potential, crane use. Many of these sites are, like Site 28, at high risk for development. Sites were identified because they contained the crane's preferred habitat, wet pine savannas, although in some cases, the particular area is currently overgrown with trees.

Property Review:

A Refuge biologist inspected four proposed mitigation sites offered by the applicants. Site 1, a 60 acre parcel on Old Fort Bayou Road, was rejected because in 1998 it was designated as mitigation lands for another project and is slated to become a part of the Refuge through those negotiations. Therefore, three sites adjacent to the Refuge were surveyed and evaluated: the Eugenie Huger Tract, the Walnut Acquisition Property, and a 30 acre parcel belong to Mr. Gary Young. Results of the evaluation are as follows:

Huger Tract - This is a 40 acre parcel containing 18 acres of thick cypress-tupelo wetland which is unsuitable for crane use. The remaining 22 acres are overgrown wet pine savanna which the Refuge biologist believes could be restored to viable crane habitat by instituting a management and maintenance program including burning and machine removal of the overgrowth.

Walnut Acquisition Property - This is a 510 acre site which also includes cypress-tupelo drains and overgrown wet pine savanna. Again, with burning and machine removal of overgrowth, the savanna may provide quality habitat for cranes.

Gary Young Property - Although encompassing 30 acres, only 6-10 acres on this property are overgrown pine savanna - having the potential to become preferred crane habitat. The remainder is upland or wet pond cypress swamp forest. The Refuge currently has access through this property via an agreement with the owner. We are unaware that this site is targeted for immediate development or that the owner plans to use it for purposes detrimental to cranes. The existing overgrown savanna is irregularly shaped and would be difficult to effectively manage after required habitat conversion.

US00068

Endangered Species Act

The Endangered Species Act (ESA), requires that any Federal action that may affect a listed species or its designated critical habitat must go through formal consultation in accordance with Section 7 of the ESA. Such consultations are required to insure that the Federal action does not jeopardize the continued existence of the species, nor destroy or adversely modify its designated critical habitat. Purchase of Site 28 by the Navy would therefore trigger the need for Section 7 consultation due to likely impacts both to the listed cranes and critical habitat. If the land remains in private ownership, and use of that land (e.g., development) would result in take[1] of cranes, that take would be prohibited. The only option for allowing take by a private individual that is incidental to an otherwise lawful action, such as development, would be a Section 10(a)(1)(B) permit issued to the landowner, including the development and implementation of a Habitat Conservation Plan, or HCP. The species is losing both critical habitat and other potential crane habitat as a result of accumulated development in Jackson County.

Because Site 28 (Rumsey-Carter property) is utilized by cranes (for breeding and foraging) and is designated Critical Habitat, the species has some protection on this parcel of land. As stated above, the location of any development at this site would have a definite impact on cranes due to the displacement of nesting, foraging, and roosting areas. However, based on preliminary discussions with the Navy and the private landowner, there may be options for providing additional security to other parcels of land (described below) that, if submitted as part of the proposed action, may provide an offset to the incremental loss of prime foraging habitat and designated Critical Habitat, both onsite and throughout the species' range. This, in turn, would reduce the likelihood that Section 7 consultation would result in a jeopardy or adverse modification biological opinion.

After reviewing maps and surveying Site 28, both from the air and on the ground, Refuge specialists believe that approximately 45 acres of prime foraging habitat and one roosting/nesting site will be lost for use by the endangered Mississippi sandhill crane. All of this site is considered "critical habitat" and it lies within the current acquisition boundary for the Refuge. Although it has been proposed that the 10 acre pond section be "set-aside" for the cranes, and mitigation credit awarded, Refuge personnel do not believe that this would be an adequate measure due to the cranes' requirement for an extensive uninterrupted buffer area of a minimum 100 meters (for

[1]Take - to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or attempt to engage in any such conduct. [ESA §3(19)] Harm is further defined by FWS to include significant habitat modification or degradation that results in death or injury to listed species by significantly impairing behavioral patterns such as breeding, feeding, or sheltering. Harass is defined by FWS as actions that create the likelihood of injury to listed species to such an extent as to significantly disrupt normal behavior patterns which include, but are not limited to, breeding, feeding or sheltering. [50 CFR §17.3]

foraging, nesting, loafing, roosting, etc. - particularly for hatchlings). The refuge may try to recreate nesting/roosting habitat at one of the other proposed offsite locations.

Based on Refuge expertise and experience and discussions with experts in the field, the options discussed below are proposed to offset loss of crane Critical Habitat due to development of Site 28. These options include additional properties to those discussed above. Due to the degree of management required and the proximity of these sites to the Refuge, we have made a preliminary determination that Operation and Maintenance costs (O&M) would be minimal and therefore were not included as an additional requirement in the following proposed options. We will reevaluate this preliminary position during the preparation of the Biological Opinion (as below). The Service's final judgement, though, on whether any proposal by the Navy would result in a determination of no jeopardy to the existence of the species and/or no adverse modification of critical habitat, would be rendered only in a Biological Opinion resulting from the Navy's request for initiation of formal consultation.

All options include on site requirements (Site 28) that involve a 30 foot development set back on the east side of property to include the existing tree line and a continuous 8 foot, Navy maintained, chain link or similar fence between refuge property and development.

Option 1: Obtain, and transfer to the Refuge, ownership of 101 adjacent acres of Walnut Acquisition property to offset loss of foraging habitat (see attached map). This property will then be converted to foraging habitat.

Option 2: Obtain, and transfer to the Refuge, ownership of the 40 acre Eugenie Huger property (see map) and 71 adjacent acres of Walnut Acquisition property. These properties would then be converted to foraging habitat.

Option 3: Obtain, and transfer to the Refuge, ownership of 77 acres of Ford Property (site identified as Tract 77 - west parcel, see map).

Option 4: Obtain, and transfer to the Refuge, ownership of 89 acres of Ford Property (site identified as Tract 78 - east parcel, see map).

Option 5: Obtain, and transfer to the Refuge, ownership of 91 acres of Bailey/Russ/Gulf Park Estates land south of Hwy 90 (identified on original acquisition maps as # 1 and 6, see enclosed maps) and 23 additional acres from another source, such as those listed above, for a total of 114 acres.

Option 6: Obtain, and transfer to the Refuge, ownership of 156 acres of Mary Miller property (see maps).

Option 7: Obtain, and transfer to the Refuge, ownership of 30 acres of Gary Young property and 113 acres of Mary Miller property (see maps).

As discussed above, because Mississippi sandhill cranes are known to utilize Site 28, and could be affected by the Navy's activities, we believe a "may affect" situation exists within the meaning of Section 7 of the Endangered Species Act and, therefore, recommend that the Navy request formal consultation with the U.S. Fish and Wildlife Service. We believe that such consultation could be completed in a compressed time frame.

For additional discussion or information, please contact Patric Harper at (334) 441-5181, x34.

Sincerely,

Larry E. Goldman
Field Supervisor

cc: USFWS, MSHCNWR (ATTN: Ms. Sabrina Keen, Refuge Manager)
USN, Pascagoula, MS (ATTN: Lt. Steve Bukoski, Public Works Director)
Messrs. Steven Carter and Lawrence Rumsey
Schooner Harbor Ventures, Inc.
910 Howard Ave., Biloxi, MS 39530

Option 1: Walnut
T7S R7W Sec 27 & 28



Option 2: Huger
T7S R7W Sec 8



US00072




Option 3: Ford Tract 77
T7S R7W Sec 2

Option 4: Ford Tract 78
T7S R7W Sec 2

Mike Dawson
FWS - Lands
601 965 4903 x 13
4010

US00073




Option 5: Bailey, Russ, Gulf Park Estates
T7S R8W Sec 35, T8S R8W, Sec 2

Option 6: Mary Miller
T6S R8W Sec 35



Option 7: Gary Young
T6S R7W Sec 27



# TAB NO. 12

01-0763

2
P(+
Cy

DEPARTMENT OF THE NAVY
SOUTHERN DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
P.O. BOX 190010
2155 EAGLE DRIVE
NORTH CHARLESTON, S.C. 29419-9010

11000
Code ES121/RD
August 17, 2001

~~01-2281~~

AUG 20 2001

U.S. Department of Interior
Fish & Wildlife Service
Field Supervisor
P.O. Drawer 1190
Daphne, AL 36526

Dear Mr.Goldman:

SUBJ: NEW FAMILY HOUSING AT NAVAL STATION, PASCAGOULA

The Navy has plans for the construction of new Family Housing for Naval Station, Pascagoula. As discussed in your letter of August 3, 2001, one of the potential housing sites, site 28, is in critical habitat for the endangered Mississippi Sandhill Crane (Grus canadensis pulla). This site is located north of Interstate 10 on Highway 57 in Jackson, County, Mississippi. As recommended by your August 3 letter and in accordance with 50 CFR 402.14, we request formal section 7 consultation for site 28.

If you have any questions regarding this matter, please contact Mr. Richard Davis at telephone number (843) 820-5589 or email address DavisRA@efdsouth.navfac.navy.mil.

Sincerely,

L. M. PITTS
Head, Environmental Planning Branch

US00078

# TAB NO. 13

STATE OF MISSISSIPPI
COUNTY OF JACKSON

# OPTION FOR EXCHANGE / CONVEYANCE OF REAL PROPERTY

**RENA A. (MRS. J. I.) FORD** is the owner in fee simple of the following real property:

> LOCATED IN JACKSON COUNTY, MISSISSIPPI: The South 77 acres of Gov't Lots 5 & 6, or the South 77 acres of the South ½ of the Southwest 1/4, Section 2, Township 7 South, Range 7 West, Jackson County, Mississippi, subject to all easements of record.

**C. LAMAR CRISWELL** is the owner in fee simple, of the following real property:

> LOCATED IN JACKSON COUNTY, MISSISSIPPI: Gov't Lot 4, or W½ of NW¼ of 2-7-7, along with an easement 50 feet in width from Bluff Creek, along the East Line of the W½ of the SW¼ of Section 35-6-7, Southerly to the North Line of Gov't Lot 4 of 2-7-7, as is set forth in Deed Book 470, pp 300-302, Land Deed Records of Jackson County, Mississippi; subject to a life estate in 5 ac. in the SE corner, (DB 800, pp 111-112), and a perpetual easement for internment of the dead (a private cemetery) on 1 acre near the West line (DB 834, p. 13), Jackson County, Mississippi. Also conveyed herein is all rights to the non-exclusive easement previously conveyed to Grantor by the PASCAGOULA

MUNICIPAL SEPARATE SCHOOL DISTRICT, across Section 3 of Township 7 South, range 7 West to the property herein described. Further subject to all easements of record in favor of other parties. GRANTOR further conveys all rights, title and interest in and to the aforereferenced private cemetery unto GRANTEE, her heirs or assigns.

These two above-described properties are of similar type, kind, and are of like value.

**SCHOONER HARBOR VENTURES, INC., STEVEN CARTER** and **LAWRENCE RUMSEY** are desirous of selling 75 acres of land unto **UNITED STATES OF AMERICA, UNITED STATES NAVY**, to be used for approximately 188 housing units. The realty of CARTER and RUMSEY is located within the defined critical habitat of the MISSISSIPPI SANDHILL CRANE, a declared and published ENDANGERED SPECIES. Conveyance of the before-described **FORD** property unto the MISSISSIPPI SANDHILL CRANE NATIONAL WILDLIFE REFUGE shall serve as "Set off" or "mitigation", for loss of valuable habitat which would otherwise be lost and result in the invocation of enforcement of certain sections of the Endangered Species Act, as is set forth in that letter from LARRY E. GOLDMAN, Field Supervisor, U. S. Fish and Wildlife Service, Daphne, Al, to SOUTHNAVFRACENGCOM, Attn: Code 0642RD, Richard Davis, dated August 3, 2001.

**RENA A. (MRS. J. I.) FORD**, is willing to exchange her property with **C. LAMAR CRISWELL**, in accordance with Section 1031 of the Internal Revenue Code, so as to incur no tax liability or expense on her part.

**C. LAMAR CRISWELL**, is willing to exchange his above-described property with **RENA A. (MRS. J. I.) FORD**, so that he may, in turn make a conveyance to **MISSISSIPPI SANDHILL CRANE NATIONAL WILDLIFE REFUGE**, for the consideration of **THREE HUNDRED THOUSAND DOLLARS ($300,000.00)**, to be paid by **SCHOONER**

**HARBOR VENTURES, INC., STEVEN CARTER** and **LAWRENCE RUMSEY**, if they should decide to exercise the **OPTION** contained herein.

FOR TEN DOLLARS ($10.00) and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, I, **RENA A. FORD**, do hereby grant unto **SCHOONER HARBOR VENTURES, INC., STEVEN CARTER** and **LAWRENCE RUMSEY**, an option to the afore-described 77 acres in the SW Quarter of 2-7-7, Jackson County, Mississippi, which if exercised, such property is to be exchanged with **C. LAMAR CRISWELL.**, for the above-described 80 acres of real property located in the NW Quarter of 2-7-7, and described adjacent rights and parcels. This OPTION shall be in force and effect for a period of one hundred eighty (180) days from date, at which time it will terminate. This OPTION money is non-refundable.

FOR **ONE THOUSAND DOLLARS**, cash in hand paid, and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, I, **C. LAMAR CRISWELL**, do hereby grant unto **SCHOONER HARBOR VENTURES, INC., STEVEN CARTER** and **LAWRENCE RUMSEY**, an OPTION, to pay unto **C. LAMAR CRISWELL** the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000.00), for which, I, **C. LAMAR CRISWELL**, shall exchange with **RENA A. (MRS. J. I. FORD)** the respective ownership of the above - described parcels of real property, and after acquisition of the above - described 77 acres of land in the SW Quarter of 2-7-7, Jackson County, Mississippi, I, **C. LAMAR CRISWELL** shall convey same unto **UNITED STATES OF AMERICA, DEPARTMENT OF INTERIOR, FISH AND WILDLIFE SERVICE, MISSISSIPPI SANDHILL CRANE NATIONAL WILDLIFE REFUGE** as mitigation for **SCHOONER HARBOR VENTURES, INC., STEVEN CARTER** and **LAWRENCE RUMSEY** to effect their sale of property to the UNITED STATES NAVY.

This payment to **C. LAMAR CRISWELL**, shall be in the form of EARNEST MONEY, paid to PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C., Attorneys at Law, to be held in escrow by said

attorneys in a non-interest bearing account and to be applied at closing to the balance due **C. LAMAR CRISWELL** on the closing date. In the event that **SCHOONER HARBOR VENTURES, INCL, STEVEN CARTER and LAWRENCE RUMSEY** fail or refuse to go forward with this conveyance as set forth above, or after the expiration of 180 days from date, then PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C. shall forthwith pay over such earnest money to **C. LAMAR CRISWELL**, who shall retain such earnest money as liquidated damages, and thereafter neither party shall have any rights against the other. In the event **C. LAMAR CRISWELL** or **RENA A. (MRS. J. I.) FORD** should fail for any reason to convey/exchange the property as set out above, upon payment of the principal sum as set out, then PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C. will refund such earnest money to Buyers, after deducting therefrom all attorneys' fees and expenses incurred by said attorneys. In the event of failure to convey/exchange when required by this contract, then **SCHOONER HARBOR VENTURES, INCL, STEVEN CARTER and LAWRENCE RUMSEY** shall have the right to seek specific performance of this agreement in a Court of competent jurisdiction in Jackson County, Mississippi.

**SCHOONER HARBOR VENTURES, INC., STEVEN CARTER and LAWRENCE RUMSEY** shall pay all closing costs in connection with this sale, including costs of any required surveys, financing fees, recording fees, and attorney's fees.

This exchange / conveyance is contingent upon **SCHOONER HARBOR VENTURES, INC., STEVEN CARTER and LAWRENCE RUMSEY** closing on the sale of the property they own as described on Exhibit "C" with the United States of America, United States Navy.

Entered into, and agreed between all parties, this the 24th day of August, 2001.

**SCHOONER HARBOR VENTURES, INC.**

BY: [signature]
STEVEN CARTER, PRESIDENT

STEVEN CARTER

LAWRENCE BUMSEY

RENA A. (MRS. J. I.) FORD

C. LAMAR CRISWELL

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STATE OF MISSISSIPPI
COUNTY OF HARRISON

PERSONALLY APPEARED before me, the undersigned authority in and for the said county and state, within my jurisdiction, the within named STEVEN CARTER, who acknowledged that he is President of Schooner Harbor Ventures, Inc., a Mississippi Corporation, and that for and on behalf of said Corporation, and as its official act and deed, he executed the above and foregoing instrument after first having been duly authorized by said corporation to so do.

NOTARY PUBLIC

My commission expires:
5/8/03

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STATE OF MISSISSIPPI
COUNTY OF JACKSON

PERSONALLY APPEARED before me, the undersigned authority in and for the jurisdiction aforesaid, C. Lamar Criswell, who upon being duly sworn, did affirm that he/she executed the foregoing instrument as his/her own free act and deed and for the purposes therein stated.

This, the 29 day of August, 2001.

NOTARY PUBLIC

My commission expires:
My Commission Expires May 8, 2002

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STATE OF MISSISSIPPI
COUNTY OF JACKSON

PERSONALLY APPEARED before me, the undersigned authority in and for the jurisdiction aforesaid, Rena A. (Mrs. J.I.) Ford, who upon being duly sworn, did affirm that he/she executed the foregoing instrument as his/her own free act and deed and for the purposes therein stated.

This, the 29 day of August, 2001.

NOTARY PUBLIC

My commission expires:
My Commission Expires May 28, 2002

STATE OF MISSISSIPPI
COUNTY OF Harrison

PERSONALLY APPEARED before me, the undersigned authority in and for the jurisdiction aforesaid, Steven Carter, who upon being duly sworn, did affirm that he/she executed the foregoing instrument as his/her own free act and deed and for the purposes therein stated.

This, the 21st day of August, 2001.

NOTARY PUBLIC

My commission expires: 5/9/03

STATE OF MISSISSIPPI
COUNTY OF Harrison

PERSONALLY APPEARED before me, the undersigned authority in and for the jurisdiction aforesaid, Lawrence Rumsey, who upon being duly sworn, did affirm that he/she executed the foregoing instrument as his/her own free act and deed and for the purposes therein stated.

This, the 21st day of August, 2001.

NOTARY PUBLIC

My commission expires: 5/9/03

INDEXING INSTRUCTIONS

STATE OF MISSISSIPPI
COUNTY OF JACKSON
TOWNSHIP 7 SOUTH, RANGE 7 WEST
SECTION 2
NW¼NW¼ SW¼NW¼, OR LOT 4
SW1/4SW1/4, SE1/4SW1/4 or S1/2 Lots 5 & 6
SECTION 3
SE¼NW¼, SW¼NE¼, SE¼NE¼

TOWNSHIP 8 SOUTH, RANGE 7 WEST
SECTION 35
NW¼SW¼, SW¼SW¼

ADDRESSES

Rena A. (Mrs. J. I.) Ford
815 Beach Blvd.
Pascagoula, Ms 39567
(228) 762-1654

C. Lamar Criswell
8604 PINE TOP ROAD
LUCEDALE, MISSISSIPPI 39452
(228) 588-2042

SCHOONER HARBOR VENTURES, INC.
STEVEN CARTER and LAWRENCE RUMSEY
910 Howard Avenue
Biloxi, Ms 39530
(228) 875-7079


Paige Lake
CREEK
TRAILER PARK
Acquisition Boundary
Ford tract - to go to Refuge
Castelle
Bayou
LAURELGLEN
DAILEY
HASTINGS
SANDHILL CRANE
SEWAGE TREATMENT

US00023


Broadus Lake
Bayou
Paige Lake
CREEK
TRAILER PARK
Trading this
for this
Castelle
Bayou
LAURELGLEN
DAILEY
HASTINGS
ROAD

US00024


BLUFF
Bayou
CREEK
Paige Lake
Broadus Lake
TRAILER PARK
Bayou
Castelle
Hickory Hill Golf Course
LAUREL
DAREY
ROAD
HASTINGS
ROAD
SIPPI SANDHILL CRANE

US00025