# EXHIBIT B

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCHOONER HARBOR VENTURES, INC., Plaintiff, | ) | No. 06-87L |
| v. | ) | Honorable Marian Blank Horn |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

DECLARATION OF SCOTT G. HEREFORD

I, Scott G. Hereford, declare as follows:

1. I am an employee of the U.S. Fish and Wildlife Service ("Service"), an agency of the U.S. Department of the Interior. My duty station is the Mississippi Sandhill Crane National Wildlife Refuge ("Refuge"), which is a unit of the Service located in Gautier, Jackson County, Mississippi. I am the Supervisory Wildlife Biologist at the Refuge. I have served as the Refuge's Wildlife Biologist for over sixteen (16) years. I have been employed with the Service for over twenty-two (22) years.

2. As the Refuge's Supervisory Wildlife Biologist, I am responsible for all aspects of the Refuge's biological program, including planning and coordinating all biological research, developing and implementing wildlife and habitat inventory and monitoring, and preparing annual and long-range management plans. I also supervise the Refuge's wildlife biologists, technicians and interns as well as those who volunteer at the Refuge. I am the primary technical expert on all Refuge habitats and wildlife, particularly on the Federally-listed endangered Mississippi sandhill crane ("Crane"). As the Refuge's master level biologist, I have lead responsibility for the Refuge's recovery and management actions for the Crane, which, as an endangered species, is subject to the protections of the Endangered Species Act of 1973, as amended (16 U.S.C. 1531, *et seq.*). The only wild free-flying Mississippi sandhill crane population in the United States occurs in Jackson County, Mississippi. Two captive populations of the species occur, however, at facilities in New Orleans, Louisiana and outside Jacksonville, Florida.

3. My educational background includes a Bachelor's degree in Biology from the University of Wisconsin and a Master's degree in Biology from the University of South Dakota. Prior to my employment with the Service, I was an aviculturist with the International Crane Foundation ("ICF"), which is considered the premier nongovernmental organization in support of worldwide conservation efforts for the recovery of cranes. An aviculturist is one who cares for and breeds birds,

especially wild birds in captivity. As an aviculturist with ICF, I cared for and bred various species of cranes. My first job with the Service was at the Patuxent Wildlife Research Center in Laurel Maryland, where I was a biologist in charge of the captive crane flock, which included the Crane. Over the years, I have developed a specialty in crane biology, particularly in the biology of the Crane.

4. I am personally familiar with the property known in this lawsuit as "Site 28." The property, which was formerly known as the Meyer property, is located in Jackson County, Mississippi, adjacent to the Refuge. As the Refuge's Wildlife Biologist, I have gone onto the property on a few occasions to confirm reports of the Crane's use of the property.

5. Based on historical and other sources of data, the Refuge was aware that the Crane used the property for nesting, foraging and roosting. For example, over the years, the Refuge maintained a record of the Crane's usage of various areas, including the Meyer property. Entries of such uses were documented and entered into a computer database by me and other knowledgeable personnel at or near the time of the reporting of such occurrences. The information recorded and entered included the date of the observation, the location of the observation, comments, the type of observation (visual, radio-telemetry, hearing, etc.), and the initials of the person observing the Crane. Radiotelemetry is a common technique used by wildlife biologists since the 1960s to determine animal location and study wildlife behavior, population biology, and ecology. With birds, small radio transmitters are attached to individuals. A receiver and antenna are used by the biologist to pick up the radio signal and determine the bird's location. In order to ensure good quality data collection from the radio transmitters, refuge personnel use standard procedures to order transmitters with the correct specifications, ensure they are working before they are placed on a Crane, and after they are placed on the Crane, test them in the field to make sure they are working properly.

6. The computer database that we maintain to document the Crane's usage of various areas both on and around the Refuge was first created in the mid-1980s. At that time, data was entered using RBase software. In the late 1990s, however, the database was converted to Microsoft Access. We have maintained information in this manner, i.e., in a database, since the mid-1980s through the present as part of our regularly conducted activities. It remains our regular practice to record the observations.

7. As part of the discovery phase of this lawsuit, I extrapolated entries of the Crane's usage of the Meyer property from the database and compiled the chart found at US00465 through US00475. The chart contains entries dating back to February 14, 1985, through May 27, 1999. Both the record and the chart are business records. To my knowledge, the chart found at US00465 through US00475 is a true and accurate copy of the chart I compiled.

8. The government's documents US04286 through US04288 are three photographs taken on June 9, 1998, at the pond on the Meyer property. The first photograph, US04286, depicts Tracy Grazia, who at the time was a Biological Technician at the Refuge, and me kneeling at the edge of the pond on the property to inspect a Crane's nest, identified as "Nest 98-21." In the photograph, Ms. Grazia is measuring the width and length of the eggs in the nest, and I am recording the data. The photograph in US04287 shows Ms. Grazia measuring the nest while I record her findings. The last photograph, US04288, also depicts Ms. Grazia and me at the nest. All of the photographs were developed from photographic slides, which are depicted in US04285.

9. I am personally familiar with the scenes depicted in both the slides in US04285 and the photographs in US04286 through US04288. I also was personally familiar with the Meyer's property on the date that the photographs were taken. The photographs fairly and accurately depict the scene and occurrences at Meyer's pond on June 9, 1998.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

This 3rd day of October, 2007.

Scott G. Hereford