# EXHIBIT E

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCHOONER HARBOR VENTURES, INC., | ) | |
| Plaintiff, | ) | No. 06-87L |
| v. | ) | Honorable Marian Blank Horn |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DECLARATION OF PATRIC HARPER

I, Patric Harper, declare as follows:

1. I am an employee of the U.S. Fish and Wildlife Service ("Service"), an agency of the U.S. Department of the Interior. I am a biologist in the Service's Daphne, Alabama Ecological Services Field Office. The Daphne office is a unit of the Service's Region 4, which is also known as the Southeast Region. I have been employed by the Service for twelve (12) years, all of which have been in the Daphne Field Office.

2. My educational background consists of a Bachelor's degree in Biology from the University of South Florida and a Master's degree in Biology from the University of South Alabama.

3. The Service's Ecological Services division with its regional and field offices acts, among other things, as the Service's lead in implementing and administering those sections of the Endangered Species Act of 1973 (the "ESA"), as amended (16 U.S.C. 1531, *et seq.*), that are specific to the biology of Federally-listed endangered and threatened species and candidate species, i.e., Sections 4, 7 and 10. As an Ecological Services office, our office handles matters in Sections 4, 7 and 10 relating to various listed and candidate species. The Federally-listed endangered Mississippi sandhill crane ("Crane") is among the species on which our office has engaged in formal consultation under Section 7 of the ESA.

4. In the Section 4 arena, our office prepares proposed and final rules for the listing of some proposed species and proposed and final rules on the designation of critical habitat for some listed species. In the Section 7 arena, our office engages in both interagency consultations with other Federal agencies and intra-agency consultations on whether an agency's proposed action will result in jeopardy to a listed species and/or in the adverse modification of a species' designated critical habitat. A Federal nexus is required for matters falling under Section 7

interagency consultation. At the close of formal consultation with an agency, our office issues a written Biological Opinion ("BO") in which we set forth our analyses and determinations regarding whether the agency's proposed action will result in jeopardy to a listed species and/or in the adverse modification of the species' critical habitat. The BO may contain an incidental take statement that authorizes and conditions the extent to which the agency can take the listed species incidental to the implementation of the proposed action. In the Section 10 arena, non-Federal entities, including, but not limited to, individuals and non-Federal governmental bodies, seek incidental take permits from the Service in order to engage lawfully in activities that would result in the incidental take of a listed species. There can be no Federal nexus in matters that fall under Section 10.

5. My area of expertise is in Section 7 of the ESA, particularly in interagency consultations. My responsibilities include reviewing, analyzing and commenting on the extent to which the proposed action will impact Federally-listed species, their designated critical habitat, and wetlands. Many of the matters on which I work involve large and varied projects proposed by Federal agencies. In most instances, once it is determined that listed species occur in the area in which an action is proposed and that the action is likely to impact the species, the Federal agency will initiate and request formal consultation with the Service under Section 7. During such consultations, I act as the Service's lead biologist. My primary role is to engage in discussions with representatives of the consulting agency regarding the scope of the proposed project, analyze the impacts of the proposed action on the listed species and any critical habitat and discuss measures that can be taken to minimize and compensate for impacts to the species. My foremost responsibility, however, is to prepare the Service's BO, which sets forth the Service's findings on whether the proposed action will result in jeopardy to the species and/or in the adverse modification of designated critical habitat. I also brief upper management in the Service on the technical aspects of complex land and water development projects and provide recommendations.

6. I am personally familiar with the Service's Biological Opinion that was issued to the U.S. Navy on February 12, 2002, after formal consultation on the impacts that would occur to the Crane as a result of the Navy's construction of a residential development on property ("property") formerly owned by the Plaintiff in Jackson County, Mississippi. I was the Service's lead biologist in the consultation, and I prepared the Biological Opinion, which found that the proposed action would not result in jeopardy to the Crane or in the adverse modification of its critical habitat. The Biological Opinion also included an Incidental Take Statement, which essentially authorized the Navy to proceed with the proposed development in accordance with certain conditions.

7. During the Section 7 consultation with the Navy, I did not speak with Steven Carter, Lawrence Rumsey or any other representative of Schooner Harbor Ventures at any time regarding any matter related to the Service's issuance of a Section 10 incidental take permit to Schooner Harbor or to any other individual or

entity for any action to occur on the property. All of my conversations with Messrs. Carter and Rumsey or any other representative of Schooner Harbor Ventures occurred during the Section 7 consultation with the Navy regarding the Navy's proposed development of the property. Because the consultation with the Navy was under Section 7 of the ESA, with the Navy and regarding the Navy's proposed development of the property, there was no basis for me to comment on what or the extent to which any conditions might be necessary for the issuance of a Section 10 incidental take permit. The Section 10 process is extremely case specific, i.e., there would have to be a discrete project or action proposed by a non-Federal individual or entity in order to determine whether Section 10 would be triggered and, if so, whether issuance of a Section 10 permit would be required and appropriate. I also have never had discussions with any other individual or entity regarding the issuance of a Section 10 permit for the implementation of any action on the property.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true correct to the best of my knowledge and belief.

This 2nd day of October, 2007.

Patric Harper