# EXHIBIT F

UNITED STATES COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * *

SCHOONER HARBOR VENTURES, INC.,

Plaintiff,

VS.

NO. 06-87L
HONORABLE MARIAN BLANK HORN

THE UNITED STATES OF AMERICA,

Defendant.

* * * * * * * * * * * * * *

The testimony of STEVEN CARTER, taken at the Law Offices of Rushing & Guice, PLLC, 604 Porter Avenue, Ocean Springs, Mississippi, on the 14th day of December, 2006, commencing at approximately 8:31 o'clock, a.m.

COPY



ec7438fa-59f5-4921-be2a-0c53cdc86a09

A P P E A R A N C E S

FOR THE PLAINTIFF:

RUSHING & GUICE, PLLC
ATTORNEYS AT LAW
604 PORTER AVENUE
OCEAN SPRINGS, MS 39564

BY: WILLIAM L. GUICE, ESQ.

FOR THE DEFENDANT -

UNITED STATES DEPARTMENT OF JUSTICE
NATURAL RESOURCES SECTION
P. O. BOX 663
WASHINGTON, DC, 20044

BY: KELLE ACOCK, ESQ.

DEPARTMENT OF NAVY
NAVY LITIGATION OFFICE
OFFICE OF THE GENERAL COUNSEL
720 KENNON STREET
SE BUILDING 36, ROOM 233
WASHINGTON NAVY YARD, DC 20374-5013

BY: MARY RAIVEL, ESQ.

MARTHA V. DUKES, CSR-MS-1717
COURT REPORTER



ec7438fa-59f5-4921-be2a-0c53cdc86a09

# I N D E X


| Examination: | Page: |
| --- | --- |
| By Ms. Acock | 06 |

| Exhibits: | Page: |
| --- | --- |
| Defendant's 15 | 37 |
| Defendant's 16 | 38 |
| Defendant's 17 | 45 |




ec7438fa-59f5-4921-be2a-0c53cdc86a09

S T I P U L A T I O N

It is stipulated by and between the parties hereto and their respective attorneys at law that the deposition on oral examination of the witness, hereto, STEVEN CARTER, may be taken before Martha V. Dukes, Commissioner, Notary Public for the State at Large, and that the said deposition shall be taken in accordance with the provisions of the applicable sections of the Federal Rules of Civil Procedure.

It is further stipulated that all notices provided for by said applicable sections of the Federal Rules of Civil Procedure are waived, as is the reading over of said deposition to or by the witness, the signing thereof by the witness, and the signing and certification of said Martha V. Dukes and all other requirements and technicalities of every sort regarding the taking and filing of the deposition, except as hereinafter set out:

All objections save as to the form of questions asked are reserved until the time of trial in accordance with the applicable provisions of the said Federal Rules of Civil Procedure.



ec7438fa-59f5-4921-be2a-0c53cdc86a09

The original of this transcript will be delivered to Kelle Acock, Esq., as custodian, for filing should the Court so direct.

It is further stipulated and agreed that the witness hereto waives the right to read and sign said deposition as provided for by said Federal Rules of Civil Procedure.

* * * * * * * * * * * * * * * * * *

I, Martha V. Dukes, Commissioner and Court Reporter, certify that on this date, as provided by the Federal Rules of Civil Procedure, there came before me at the Law Offices of Rushing & Guice, PLLC, 604 Porter Avenue, Ocean Springs, Mississippi, on the 14th day of December, 2006, commencing at 8:31 o'clock, a.m., STEVEN CARTER, witness in the above cause, for oral examination, whereupon the following proceedings were had:



ec7438fa-59f5-4921-be2a-0c53cdc86a09

STEVEN CARTER,

the witness, having been duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MS. ACOCK:

Q. Mr. Carter, my name is Kelle Acock; I represent the United States, and I'm here with Mary Raivel from the Department of the Navy. I don't know if you've been deposed before, but a lot of people describe it as a tennis match, where I ask a question, and then it's your turn to answer, and we'll just try not to talk over each other because Ms. Dukes is going to be recording everything that we say. So if we're talking over each other, she might not be able to hear who's saying what. If you need a break at any time, just let us know and we can take a break.

Could you state your name for the record.

A. Steven Carter.

Q. And what is your current residence?

A. 109 Surgeres Place.

Q. Can you spell that, please.

A. S-U-R-G-E-R-E-S Place, Ocean Springs.

Q. How long have you resided at this address?

A. Eight years.



ec7438fa-59f5-4921-be2a-0c53cdc86a09

A. Yes.

Q. What was that correspondence?

A. When I initially met with Sabrina Keen and she told me that the birds used the property.

Q. What did she say that led you to believe if you did not purchase mitigation property you would not be able to sell the property?

A. She was telling me that the birds used the property and that she was -- I think she basically -- she told us that if we didn't -- we had to do something to mitigate or make it better for these birds.

Q. And was that just in connection to the sale with the Navy, or did anyone from the refuge indicate you would have to go through the same steps if you were to sell to anyone else?

A. They indicated that we may have to go through the same steps no matter who we sold it to.

Q. Who said that?

A. Sabrina.

Q. What did she say or do that led you to that belief?

A. Several times she said that the birds used the property. You're going to have to do something or we're going to -- we're going to hold you up.

Q. And did she say anything that was in reference to

any other potential purchaser other than the Navy?

A. I don't recall.

MS. ACOCK: What time is your call again, Mr. Guice?

MR. GUICE: About ten of.

MS. ACOCK:

Q. Do you believe that if Schooner Harbor did acquire mitigation property that Schooner Harbor would be allowed to sell the property to the Navy?

A. That's what the biological opinion said, yes.

Q. And were you also under the impression, if Schooner Harbor acquired mitigation property, that Schooner Harbor would be able to sell to someone else?

A. Well, I don't know that because that's -- we weren't traveling down that road. That's a hypothetical -- I mean we weren't there.

Q. So the only consideration for Schooner Harbor was purchasing mitigation property for the Navy to facilitate the sale to the Navy?

A. At the point where we were at, yeah, that was -- if we wanted to sell it to the Navy, we were going to have to buy the property.

Q. Were you under the impression that there were any other requirements or conditions being imposed by Fish & Wildlife Service or any other government entity in order

the property to any other potential purchaser after receiving the biological opinion?

A. I don't believe I did.

Q. Do you know if anyone expressed interest in the property after receiving the biological opinion?

A. I don't believe any serious -- none comes to mind.

Q. What do you mean by serious?

A. Well, there's always tire kickers, you know, but I don't know -- serious would be somebody writes down, makes an offer.

Q. Did anybody speak to you about the possibility of purchasing the property after receiving the biological opinion?

A. I don't recall.

Q. Was it your understanding that after receiving the biological opinion, if the terms set forth in the biological opinion were satisfied, that the property could be developed?

A. It could be developed by the Navy. I think it was specific to the Navy.

Q. The biological opinion was specific to the Navy?

A. (Witness nods head affirmatively.)

Q. After receiving the biological opinion, were you under the impression that down the road another



ec7438fa-59f5-4921-be2a-0c53cdc86a09