UNITED STATES COURT OF FEDERAL CLAIMS

(E-filed: October 11, 2007)

| | | |
|---|---|---|
| SCHOONER HARBOR VENTURES, INC., Plaintiff, | ) | No. 06-87 L |
| v. | ) | Honorable Marian Blank Horn |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Defendant United States of America hereby files its Proposed Findings of Uncontroverted Fact.

1. In 1972, the Mississippi sandhill crane was listed as a subspecies of the sandhill crane and was added to the United States' List of Endangered Fish and Wildlife on June 4, 1973. See 38 Fed. Reg. 14678 (June 4, 1973) included in the JA at Tab 26, p. JA 0166; see also JSF p. 1, No. 1; JA Tab 1, p. JA 0005. Once the Mississippi sandhill crane was listed as endangered, it became unlawful for any person to "take" the crane in violation of Section 9 of the ESA. See 16 U.S.C. § 1538(a)(1)(B).

2. In 1975, the FWS established the Mississippi Sandhill Crane National Wildlife Refuge ("Refuge"), which is located in Gautier, Jackson County, Mississippi. See JSF p. 1, No. 4; JA Tab 1, p. JA 0005; see also JSF p. 3, No.19; JA Tab 10, p. JA 0087. The Refuge's objectives include providing protection and management for the crane, protecting and preserving unique

wetpine savanna communities, and providing environmental education, interpretation, and wildlife-oriented recreation. JSF pp. 2-3, Nos. 6, 19; JA Tab 28, pp. JA 0171-172.

3. On July 29, 1977, through a rulemaking, the FWS designated critical habitat for the Mississippi sandhill crane, and the rule was published in the Federal Register on August 8, 1977. JSF p. 2, No. 7; see also 42 Fed. Reg. 39985 (August 8, 1977) included in the JA at Tab 27, pp. JA 0167-0170. Specific coordinates delineating the designated critical habitat and a map depicting the designated critical habitat area were published with the rule. See JA 0169-170. The published rule noted, among other things, that based on the Director of the FWS's review and consideration of comments, data, and other information, "the areas delineated below are determined to be Critical Habitat for the Mississippi sandhill crane." JA 0169. The published rule added that "[T]he same area had been determined to be Critical Habitat in an emergency rule-making published on June 30, 1975 (40 FR 27601-27602)." JA 0168. The property at issue in this lawsuit is located within the boundaries of the 1977 designation of critical habitat and is also adjacent to the Refuge. JSF p. 2, No. 8; see also 42 Fed. Reg. 39985 (August 8, 1977), JA Tab 27, pp. JA 0169-0170; JSF p. 3, No. 18; JA Tab 1, p. JA 0004.

4. In 1998, Plaintiff entered into an option contract to purchase approximately 82 acres of property ("original purchase") located on Highway 57 and north of Interstate 10 in Jackson County, Mississippi, from Alicia Swiney Pearce, as conservator on behalf of Henry Meyers. JSF p. 2, No. 9; JA Tab 2, p. JA 0024. Plaintiff planned to market the property as an industrial park.

JSF p. 2, No. 10; JA Tab 2, p. JA 0024. To that end, Plaintiff showed its plan to the economic director for Jackson County and received little response. JSF p. 2, No. 11; JA Tab 2, p. JA 0024.

5. Plaintiff purchased the property from Pearce in January 2000. See JSF p. 3, Nos. 16-17; see also JA Tab 4, pp. JA 0042, Pl.'s Resp. to Req. for Admis. No 1. The unsigned settlement statement indicates Plaintiff paid approximately $963,802 for the property, which consisted of approximately 82 acres of land. See JSA p. 3, No. 17; see also JA Tab 32, pp. JA 0177-0179. Through a series of three transactions in July and August 2000, Plaintiff sold approximately 8 acres of its original 82-acre parcel for approximately $430,000, leaving Plaintiff with approximately 74.64 acres, which is the subject of Plaintiff's Complaint. JSF p. 4, Nos. 23-25, 27; see also JA Tab 4, pp. JA 0042-0044, Pl.'s Resp. to Req. for Admis. Nos. 1, 3-5.

6. From late 2000 through March 2001, the Navy began identifying undeveloped properties, also referred to as "sites," in Jackson County, Mississippi, that would be suitable to construct approximately 188 housing units to house Navy personnel and dependants assigned to Naval Station Pascagoula ("NS Pascagoula"). JSF p. 5, No. 29; see also JA Tab 18, p. JA 0134; see also JA Tab 5, pp. JA 0055-0056. After identification and evaluation of approximately 30 sites, the Navy eliminated from consideration all but five sites. The property at issue in this lawsuit, referred to as "Site 28" by the Navy, was among the five remaining sites. JSF p. 5, No. 29-33; JA Tab 5, pp. JA 0073-0078; see also JSF p. 5, No. 31.

7. Through a series of communications between the Navy; the Navy's contractor, Ecology and Environment ("E&E"); the FWS; and the Refuge, the Navy was informed that, among other things, Site 28 was within the designated critical habitat of the Mississippi sandhill crane, a "highly endangered species," and 45 acres of prime habitat would be lost if the proposed housing development was constructed on Site 28. See JSF p. 7, Nos. 43, 47; see also JA Tabs 9, 10, pp. JA 0085, 0087. By letter dated April 4, 2001, the FWS also expressed concern to E&E that the housing project, if located on either Site 8, 28, or 29, could impact the crane, its habitat, and/or the Refuge. See JSF p. 7, No. 43; JA Tab 9, p. JA 0085. In the letter, the FWS noted the Mississippi sandhill crane's historic usage of Site 28 for nesting and foraging and the impacts to the crane were the housing project to be built on Site 28. See JSF p. 7, No. 44; JA Tab 9, pp. JA 0085-0086. Given these impacts, the FWS recommended that the Navy "seriously consider avoidance" of Sites 8, 28, and 29. See JSF p. 7, No. 44; JA Tab 9, p. JA 0086.

8. By letter dated July 9, 2001, Plaintiff advised the Navy that Plaintiff had met with the FWS regarding the FWS's concerns about possible impacts to the Mississippi sandhill crane as a result of the Navy's proposed development on Site 28. JA Tab 30, p. JA 0175; see also JSF p. 11, No. 73 (stipulating to the letter's authenticity). Plaintiff also informed the Navy that Plaintiff "expressed a desire" to work with the FWS to explore ways to offset adverse effects on the Navy's proposed use of Site 28 and believed "some workable solution" could be achieved to remove concerns of the FWS. JA Tab 30, p. JA 0175. Plaintiff added it was "working diligently to achieve this outcome, at no expense to the Navy, and fe[lt] comfortable that a workable solution [would] be achieved shortly." JA Tab 30, p. JA 0175; see also Exhibit ("Ex.") I-J

(Plaintiff confirmed to the Navy that Plaintiff would secure a mitigation parcel at no expense to the Navy or the FWS).

9. On August 3, 2001, the FWS wrote a letter to the Navy and informed the Navy of a June 27th meeting with Plaintiff concerning the purchase of offsite lands. The letter further explored the possibility of the acquisition of an offsite parcel, listed seven potential offsite parcels as options in addition to on site measures on Site 28, such as a setback and chain link fence between the proposed development and the Refuge, to offset impacts to the Mississippi sandhill crane. See JSF p. 8, No. 49; JA Tab 11, pp. JA 0088-0096; JSF p. 8, No. 50; JA Tab 11, p. JA 0091. In the letter, the FWS also informed the Navy that a "may affect" situation existed within the meaning of Section 7 of the ESA as to Site 28 and recommended that the Navy request formal consultation with the FWS on developing Site 28. JSF p. 8, No. 51; JA Tab 11, p. JA 0092. The Navy contacted the FWS by letter dated August 20, 2001, and requested formal section 7 consultation for Site 28. JSF p. 8, No. 52; JA Tab 12, p. JA 0097.

10. On August 29, 2001, Plaintiff, Rena Ford, and Lamar Criswell entered into an option contract for purchase of an offsite parcel. JSF p. 8, No. 53; see also JA Tab 13, p. JA 0098-0106. The option contract set forth that Ford agreed to exchange 77 acres of land ("Ford tract") with Criswell "in accordance with Section 1031 of the Internal Revenue code, so as to incur no tax liability or expense on her part." JSF p. 8, No. 54; see also JA Tab 13, p. JA 0099. Criswell agreed to exchange his property with Ford, so that Criswell "may, in turn make a conveyance to Mississippi Sandhill Crane National Wildlife Refuge, for the consideration of $300,000.00" to be

paid by Plaintiff should Plaintiff choose to exercise the option. JSF p. 9, No. 55; see also JA Tab 13, pp. JA 0099-0100.

11. On September 20, 2001, the FWS wrote the Navy a letter confirming initiation of the formal consultation process. JSF p. 9, No. 56; JA Tab 14, pp. JA 0107-0108. Plaintiff contacted the Navy by letter dated January 17, 2002, and informed the Navy that Plaintiff "is still very much interested in the sale [of Site 28] at the aforementioned price of $1.9 million." JSF p. 9, No. 58; JA Tab 16, pp. JA 0111. Plaintiff also notified the Navy that its option to purchase offsite property expired on February 29, 2002. JSF p. 9, No. 59; JA Tab 16, pp. JA 0111.

12. On February 12, 2002, the FWS issued its BO. See JSF p. 9, No. 60; see also JA Tab 1, pp. JA 0001-0019. The BO analyzed the Navy's proposed action, which was the Navy's proposed development of Site 28 with the Plaintiff's purchase and conveyance of an offsite parcel to the FWS. See JA Tab 1, p. JA 0004. The BO concluded that the proposed action was "not likely to jeopardize the continued existence of the Mississippi sandhill crane or destroy or adversely modify designated critical habitat." JA Tab 1, p. JA 0014. The BO also included an Incidental Take Statement providing that, if the Navy implemented reasonable and prudent measures, including reducing onsite noise and visual disturbance, pollution, and the likelihood of Navy personnel intruding onto the Refuge, the impact of incidental take on the crane would be minimized. JA Tab 1, pp. JA 0014-0017.

13. On March 28, 2002, Plaintiff wrote to Beau Gex, District Chief of Staff to Congressman Gene Taylor, informing Gex of occurrences regarding Site 28, including, among other things, the issuance of the BO "with a favorable decision being rendered" and that a price had been negotiated with the Navy's Real Estate Division for the purchase of Site 28. JA Tab 29, p. JA 0173-0174; see also JSF p. 12, No. 74 (stipulating to the letter's authenticity). Plaintiff noted that the "final package" had been sent to Washington for final approval by the Navy's Commander in Chief, U.S. Atlantic Fleet. JA Tab 29, p. JA 0174. Plaintiff further stated in the letter that it would "appreciate any efforts you can make on our behalf to find out when this process might come to a conclusion." Id.

14. On April 17, 2002, the Navy signed the Agreement for Purchase of Real Property ("Purchase Agreement") that was previously executed by Plaintiff two days earlier. See JSF p. 10, No. 63; see also JA Tab 19, pp. JA 0135-0141. Per the Purchase Agreement, Plaintiff, as vendor, agreed to sell approximately 74.64 acres to the United States for $1.9 million. See JSF p. 10, No. 64; see also JA Tab 19, p. JA 0135. The Purchase Agreement stated, "[T]he vendor additionally agrees, as part of the aforementioned $1,900,000.00 consideration, to convey to the U.S. Department of the Interior Fish and Wildlife Service (Service) a separate parcel of land to offset the impacts caused by the Navy's construction of its housing development in designated critical habitat for the Mississippi sandhill crane." JSF p. 10, No. 65; see also JA Tab 19, p. JA 0135. Plaintiff transferred the property at issue to the United States through the Navy by warranty deed on May 3, 2002. See JSF p. 10, No. 66; see also JA Tab 20, pp. JA 0142-0149.

15. That same day, in accordance with the terms of its Purchase Agreement with the Navy, Plaintiff paid Lamar Criswell $300,000 in order to secure Criswell's transfer of 77 acres of property to the FWS pursuant to the option contract entered into by Plaintiff, Ford, and Criswell. See JSF p. 10, No. 67; see also JA Tab 23, p. JA 0153, Pl.'s Resp. to Def.'s Req. for Admis. No. 9; JA Tab 31, p. JA 0176; JA Tab 13. Criswell then transferred 77 acres of property to the United States "for the use and benefit of the U.S. Fish and Wildlife Service of the Department of the Interior," pursuant to the option contract. See JSF p. 11, No. 68; see also JA Tab 21, pp. JA 0150-0151; JA Tab 13. In connection with Criswell's transfer of the property to the FWS, Plaintiff expended the following sums: $10,500 to Jim Horne to negotiate purchase of the property to be donated to the FWS, $2,000 finder's fee to John M. "Cappy" Ford, and $1,906.65 in closing costs ("related expenses"). JSF p. 11, No. 69; see also JA Tab 25, pp. JA 0163-0165; JA Tab 23, pp. JA 0153-0155, Plt's Resp. to Def.'s Req. for Admis. Nos. 10, 12. Deducting the purchase price of the Criswell property and the related expenses from the $1.9 million sum that Plaintiff received from the Navy for its property yields a figure of $1,585,593.35.

16. The Navy subsequently developed Site 28 as personnel housing. See JSF p. 11, No. 72.

Dated: October 11, 2007

Respectfully Submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kelle S. Acock

KELLE S. ACOCK

Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0428
Fax: 202-305-0267
Email: kelle.acock@usdoj.gov

Of Counsel:
VICKI MOTT
Department of the Interior
Office of the Solicitor

ALEACIA CHINKHOTA
Navy Litigation Office