IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SCHOONER HARBOR VENTURES, INC. | PLAINTIFF |
| VS. | CAUSE NO. 06-87 L |
| UNITED STATES OF AMERICA | DEFENDANT |

# PARTIAL RESPONSE OF THE PLAINTIFF, SCHOONER HARBOR VENTURES, INC., TO DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

WILLIAM LEE GUICE III
MS BAR NO. 5059
RUSHING & GUICE, PLLC
POST OFFICE BOX 1925
BILOXI, MS 39533-1925
PHONE: 228-875-5263
FAX: 228-875-5987
E-mail: bguice@rushing-guice.com

ATTORNEYS FOR PLAINTIFF

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. TAKINGS CLAIM ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. PLAINTIFFS HAVE A LEGALLY COGNIZABLE PROPERTY INTEREST . . . . . 4

A. WHAT IS PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. SCHOONER HARBOR HAD A COMPENSABLE PROPERTY INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. SCHOONER HARBOR HAD AN UNRESTRICTED RIGHT OF ALIENATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

D. SCHOONER HARBOR HAD A RIGHT TO ECONOMICALLY EXPLOIT THE LAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

E. THE CASES RELIED UPON BY THE GOVERNMENT DO NOT CONCERN THE NATURE OF REAL PROPERTY . . . . . . . . . . . . . . . . . . . . 7

V. SCHOONER HARBOR'S CLAIM IS RIPE . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . 9

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

## TABLE OF AUTHORITIES

### CASES

*Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004), *cert. denied*, ---- U.S. ----, 126 S.Ct. 330, 163 L.Ed.2d 43 (2005) . . . . . . . . . . . . . . . . . . . . . . 3

*American Pelagic Fishing Co. v. United States*, 379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3

*Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brown v. U.S.*, 73 F.3d 1100, 1105 (C.A.Fed. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cf. U.S. v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 1066 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dukes v. Crumpton*, 233 Miss. 611, 620, 103 So.2d 385, 388 (Miss. 1958) . . . . . . . . . . . . . . . 6

*E. Minerals Int'l, Inc. v. United States*, 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981) . . . . . . . . . . . . . . . 3

*Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Karuk Tribe of Cal. v. Ammon*, 209 F.3d at 1374 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374-75 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001) . . . . . . . . . . . . . . . . . . . . 3

*Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285 . . . . . 9

*Members of the Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323 (Fed. Cir. 2005) . . . . . 7, 8

*Mohlen v. U.S.*, 74 Fed. Cl. 656, 660-661 (Fed. Cl. 2006). . . . . . 4

*Mullins v. Ratcliff*, 515 So.2d 1183, 1190 (Miss. 1987). . . . . . 5

*National Soffit & Escutcheons, Inc. v. Superior Sys. Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) . . . . . 2

*O'Neill v. O'Neill*, 551 So.2d 228, 232 (Miss. 1989) . . . . . 11

*PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss. 1984) . . . . . 11

*Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed. Cir.), *reh'g denied* (1993) . . . . . 3

*Thompson v. Kreutzer*, 72 So. 891 (1916) . . . . . 4

*United States v. Gen. Motors Corp.*, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) . . . . . 3

*Walcek v. United States*, 303 F.3d 1349, 1354 (Fed. Cir.) *Reh'g and reh'g en banc denied* (2002) . . . . . 4

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 . . . . . 9

*Wyatt v. United States*, 271 F.3d at 1099-1100 . . . . . 3

*Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001), *cert. denied sub nom* . . . . . 4

**STATUTES**

Miss. Code Ann. § 89-1-15 . . . . . 5

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

**RULES**

Fed. R. Civ. P. 56(c) . . . . . . . . . . 2

**MISCELLANEOUS**

2 *Blackstone*, 2 . . . . . . . . . . 4

23 *Am. & Eng. Enc. Law* (2d Ed.) 259 . . . . . . . . . . 4

32 *Cyc.* 647 . . . . . . . . . . 4

6 *Words & Phrases* (First Series) 5697, *et seq.* . . . . . . . . . . 4

*Burdick on Real Property*, 2 . . . . . . . . . . 4

*Black's Law Dictionary* 567 (7th Ed. 1990) . . . . . . . . . . 5

*Black's Law Dictionary* 674 (7th Ed. 1990) . . . . . . . . . . 5

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

**PARTIAL RESPONSE OF THE PLAINTIFF,
SCHOONER HARBOR VENTURES, INC.,
TO DEFENDANT UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, SCHOONER HARBOR VENTURES, INC., and files this its Partial Response to the Defendant's Motion for Summary Judgment, and in support of same would show unto the court, the following to-wit:

## I. FACTS

Plaintiff held title to approximately 75 acres of undeveloped land north of Interstate 10 on Highway 57 in Jackson County, Mississippi (hereinafter the "Property"). Plaintiff had the right to sell and develop the Property. These development rights were an integral part of the Property's title and value. Plaintiff fully expected to develop the Property for sale, and/or to sell the Property with full rights of future development. In furtherance of, and in reliance upon, those reasonable expectations, Plaintiff expended considerable sums in purchasing and arranging for the sale and development of the Property.

The United States of America, the State of Mississippi, Jackson County and the public at-large have clearly benefitted from the activities of the Plaintiff with respect to the purchase and development of the Property in that the Property was purchased by the United States Navy for the express purpose of constituting a 188 family housing unit assigned to the Naval Station Pascagoula. The Plaintiff desired to sell the 75 acre Property to the United States of America and the United States Navy, to be used for said housing project.

However, as the Property of the Plaintiff was located within a defined critical habitat of the Mississippi Sandhill Crane, a declared and published endangered species, development of the Property was not allowed. In order to continue with the sale of the Property to the Navy, the Plaintiff

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

would be required to purchase off-site lands which it could include in its sale package to the United States Navy in order to offset the impact caused by the housing project to designated critical habitats on the Property. Thus the Plaintiff was required to sacrifice all economically beneficial use of the Property in the name of the common good. As a result of the USFWS's determination under the Endangered Species Act insofar as it establishes requirements for the development of critical habitats which preclude the development of the Property for any productive or beneficial use and which has denied the Plaintiff all economically viable use of the Property and interfered with the distinct investment backed expectations of the property and have affected the taking of the Plaintiff.

## II. STANDARD FOR SUMMARY JUDGMENT:

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact an that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). A fact is "material" if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "genuine" where is evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining whether a genuine issue exits, the Court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. *National Soffit & Escutcheons, Inc. vs. Superior Sys. Inc.*, 98 F. 3d 262, 265 (7th Cir. 1996). The moving party bears the burden of demonstrating the "absence of evidence to support the nonmoving party's case," *Celotex Corp. vs. Catrett*, 477 U.S. 317, 325 (1986). The summary judgment procedure does not authorize trial by affidavit. Rather, " [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc., supra,* at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems,* 669 F.2d 1026, 1031 (5 Cir.1982); *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5 Cir.1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5 Cir.1969).

## III. TAKINGS CLAIM ANALYSIS

To succeed under the Takings Clause in the Fifth Amendment, the plaintiffs must show that the government took their private property for public use without just compensation. *See Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir.2004), *cert. denied,* --- U.S. ---, 126 S.Ct. 330, 163 L.Ed.2d 43 (2005). A takings claim requires a **two-step analysis.** To succeed, a takings plaintiff must have:

a. A **legally cognizable property interest**, such as the right of possession, use or disposal of the property. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (citing *United States v. Gen. Motors Corp.,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945)); *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366, 1374-75 (Fed.Cir.2000), *cert. denied,* 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001); *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1580 (Fed.Cir.), *reh'g denied* (1993).

b. Then, if the plaintiff does possess a property interest, the court decides if the **governmental action at issue constituted a taking of that property**. *See Wyatt v. United States,* 271 F.3d at 1099-1100; *Boise Cascade Corp. v. United States,* 296

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Karuk Tribe of Cal. v. Ammon,* 209 F.3d at 1374; *Mohlen v. U.S.*,74 Fed.Cl. 656, 660 -661 (Fed.Cl.,2006)

This Court must first determine whether plaintiff possesses a cognizable property interest in the subject of the alleged taking. The question of whether plaintiffs owned a compensable property interest presents "a question of law based on factual underpinnings." *Walcek v. United States,* 303 F.3d 1349, 1354 (Fed.Cir.) ( *citing Wyatt v. United States,* 271 F.3d 1090, 1096 (Fed.Cir.2001), *cert. denied sub nom. E. Minerals Int'l, Inc. v. United States,* 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002)), *reh'g and reh'g en banc denied* (2002).

Pursuant to the Court's direction, Plaintiff will limit its Response to the first step and will show that Plaintiff had a compensable property interest and thus Defendant is not entitled to Summary Judgment. The Government's argument contained much verbosity not limited to compensable property interest. In the interest of addressing the argument more succinctly, Plaintiff will not respond page for page to the Government's memorandum.

## IV. PLAINTIFFS HAVE A LEGALLY COGNIZABLE PROPERTY INTEREST

### A. WHAT IS PROPERTY?

Ownership is not a privilege conferred by government, but is one of the rights which governments were organized to protect. In a strict legal sense, "property" (from the Latin word *proprius*, meaning belonging to one; one's own) is synonymous with the "right of ownership" and means one's exclusive right of possessing, enjoying, and disposing of a thing. *Thompson v. Kreutzer*, 72 So. 891 (1916), citing *Burdick on Real Property*, 2; 2 *Blackstone*, 2; 6 *Words & Phrases* (First Series) 5697 *et seq.*; 23 *Am. & Eng. Enc. Law* (2d Ed.) 259; 32 *Cyc.* 647.

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

An estate in land is the amount, degree, nature and quality of a person's ownership interest in land. *Black's Law Dictionary* 567 (7th Ed. 1990). The largest estate one can own is the fee simple. Miss. Code Ann. § 89-1-15. Every conveyance of land in Mississippi is considered a conveyance of a fee simple estate unless some express words limit the conveyance to a lesser estate. *Black's Law Dictionary* 675 (7th Ed. 1990). There are no "magic words" required by common law for the conveyance of a fee simple estate in Mississippi. A right in property implies a legal power to convey that right as the holder desires. *Mullins v. Ratcliff*, 515 So.2d 1183, 1190 (Miss.,1987).

B. SCHOONER HARBOR HAD A COMPENSABLE PROPERTY INTEREST

Schooner Harbor owned a fee simple interest in real property. The actions of the Government restricted the ability of Schooner Harbor to freely transfer (alienate) its real property for which Schooner Harbor is due just compensation. Schooner Harbor had a compensable property interest as it was fee simple title holder to the real property in question. There were no words in the conveying deed which limited the conveyance to a lesser estate. The Government seeks to have Schooner Harbor prove that it had a right to sell the property without limitation; however, the burden is on the Government to show that the right is restricted. The state of the law in Mississippi is that Schooner Harbor had the right to sell without limitation ***unless*** express words limited that right. The Government has shown in its detailed review of the language of the conveying deed that there are no such limitations.

C. SCHOONER HARBOR HAD AN UNRESTRICTED RIGHT OF ALIENATION

As every conveyance of land in Mississippi is considered a conveyance of a fee simple estate unless some express words limit the conveyance to a lesser estate, Schooner Harbor had a fee simple interest in the property. It is an uncontested face that there is nothing in the deed granting title to the

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Plaintiffs which limited the conveyance to a lesser estate. It is uncontested that Schooner Harbor owned the real property in question in this matter prior to the sale to the U.S. Navy. There is no stronger ownership right then a fee simple interest in real property. Inherent in such ownership is the right of alienation. As Plaintiff had fee simple title to the real property in this matter, the Plaintiff acquired the right of alienation in its bundle of rights and thus a compensable interest in the property which was taken from it by the restriction on the use of the property by the Defendant.

It is common to describe property ownership as a "bundle of rights" in relation to things. The most important rights in this metaphorical bundle are: (1) the right to exclude; (2) the right to transfer; and (3) the right to use and possess. Plaintiffs then have an unrestricted right of alienation. The right of alienation is an indispensable incident to an estate in fee, such as was, conveyed by the granting clause of the deed to Plaintiffs. Any restriction on sale to the United States Navy is an illegal and void restraint upon alienation and repugnant to the granting clause of the deed. *Dukes v. Crumpton* 233 Miss. 611, 620, 103 So.2d 385, 388 (Miss.1958). Schooner Harbor would agree with the Government that the deed and purchase agreement with the Navy are enough to determine the compensable property interest issue, and would further state the Defendant has put forth no case law sufficiently on point with regard to the taking of real property to support its argument that Schooner Harbor did not have a compensable property interest in the land sold to the U.S. Navy. Schooner Harbor held the right of alienation in the subject property, and the taking of that right resulted in a loss which is compensable under the Fifth Amendment.

D. SCHOONER HARBOR HAD A RIGHT TO ECONOMICALLY EXPLOIT THE LAND

An important element in a property owner's bundle of rights is the right to economically exploit his land-the right to sell the land for the best price available in the market, based not only on

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

its current use but on potential other uses for which the market is presently prepared to pay. *Cf. U.S. v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 1066 (1946)(noting that market value may reflect "the use to which the land could readily be converted, as well as the existing use"). In a takings case involving "fly overs" by a local military base, the Court held that under the Government's view, the Government would be able to make uncompensated use of private property if that use did not immediately interfere with the landowner's current use. Thus, overflights could not give rise to compensable takings on land held for investment purposes or for future development. The Government effectively could preclude future, lawful uses of the property-uses which have been recognized and valued by the market before the overflights-without compensation to the owner, simply by making such uses undesirable or unprofitable. The Court held that the Fifth Amendment does not permit the Government to destroy individual rights in that manner. *Brown v. U.S.* 73 F.3d 1100, 1105 (C.A.Fed.,1996)

E. THE CASES RELIED UPON BY THE GOVERNMENT DO NOT CONCERN THE NATURE OF REAL PROPERTY

The Government relies primarily on two takings cases dealing with intangible property rights. The Defendant has been unable to support its argument with any case law involving fee simple ownership of land, but instead has relied upon statutory provisions disqualifying a party from receiving expected loan rates and future peanut quotas and on statutes allowing fishing permits. *See Members of the Peanut Quota Holders Ass'n. Inc. v. United States*, 421 F.3d 1323 (Fed. Cir. 2005) and *American Pelagic Fishing Co. v. United States*, 379 F.3d 1363 (Fed. Cir. 2004). The holding in *American Pelagic Fishing Co. v. United States*, 379 F.3d 1363 (Fed.Cir.2004), requires plaintiff to possess a private property interest in order to be eligible for compensation under the Fifth

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Amendment. As noted above, the Federal Circuit has firmly established the two-part test for takings claims in this court that requires a plaintiff to demonstrate a protected property interest. *Members of the Peanut Quota Holders Ass'n v. United States,* 421 F.3d 1323 (Fed.Cir.2005), is also cited for the proposition that **property compensable under the takings clause must possess certain indicia of private property, including the ability to transfer and the ability to exclude others from use or enjoyment of that property**.

In *Peanut Quota Holders,* the Federal Circuit held that "the decisions by both the Supreme Court and this court imply that a compensable interest is indicated by the absence of express statutory language precluding the formation of a property right in combination with the presence of the right to transfer and the right to exclude." *Id.* at 1331.

Although, Schooner Harbor asserts that it had the right to transfer and the right to exclude by virtue of a fee simple interest in the property without limiting language in its deed and thus had a compensable interest under *Peanut Quota Holders,* Schooner Harbor asserts that the factual analysis in both cases relied upon by the Government revolves around intangible property and are thus not applicable to a real property matter such as the one at bar. The issues of a Fifth Amendment taking clearly become more difficult when dealing with intangible property and the nature of those rights. However, the issue of compensable property has never been a difficult one under a real property analysis and the Fifth Amendment. It is a difficult proposition to argue that an owner has no compensable interest in real property, and is an argument that is not supported by the intangible property cases relied upon by the Government. The Fifth Amendment was originally written to protect real property, and is clear that a compensable property interest is involved when Schooner

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Harbor received fee simple title to the property in question without limitations in the language of the deed or otherwise.

## V. SCHOONER HARBOR'S CLAIM IS RIPE

The Plaintiff has never claimed that it acquired a specific right to sell to the Navy without restriction. The Plaintiff asserts however that with its right of alienation and fee simple ownership it had the right to sell to any party. Once negotiations were entered into with the Navy and the Plaintiff was advised that the Mississippi Sandhill Crane Refuge would assert that the cranes would be harmed by any development on the property, any further action by the Plaintiff would have been futile. Plaintiff acknowledges that a takings claim challenging application of land-use regulations is not ripe unless the agency charged with implementing the regulations has reached a final decision regarding their application to the property at issue. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126. A final decision does not occur until the responsible agency determines the extent of permitted development on the land. *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285.

Although a landowner may not establish a taking before the land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation, *e.g., MacDonald, supra,* at 342, 106 S.Ct. 2561, once it becomes clear that the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened. In *MacDonald*, the Council's decisions make plain that it interpreted its regulations to bar petitioner from engaging in any filling or development on the wetlands. Further permit applications were not necessary to establish this point. This is applicable to Schooner Harbor,

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

as once the Navy had instituted proceedings to determine applicability of ESA to property at issue, no further permits by Plaintiffs were necessary.

Summary Judgment on this matter is not applicable as there are contested issues of material fact. It is a contested issue of material fact if it was reasonable for Schooner Harbor after it purchased the property to not try to get approval from the government under the regulations after being informed of requirement for mitigation in the sale to the Navy. It is a contested issue of material fact if it was reasonable that Plaintiff did not contact the US Fish and Wildlife Service to ascertain whether any proposed development or alterations to the property would impact any federally listed species. It is a contested issue of material fact if any further benefit would have been gained by additional permitting requests by the Plaintiff after the Plaintiff was informed of the requirement for mitigation in the sale to the Navy. It is a contested issue of material fact whether it was standard practice in Jackson County, Mississippi to investigate if endangered species are located on property during the due diligence period of a buyer in a land sale transaction. It is a contested issue of material fact if it became clear that the permissible uses of the subject property are known to a reasonable degree of certainty after the Plaintiff was informed of the requirement for mitigation in the sale to the Navy. It is a contested issue of materia fact whether there was a due diligence requirement in the contract for sale between Schooner Harbor Ventures, Inc. and the Navy. It is a contested issue of material fact whether there is a standard contingency concerning endangered species in contracts in Jackson County, Mississippi for the sale of real property.

Plaintiffs were told by USFWS that in order to sell property to Navy and to develop property mitigation property would be required, no further benefit would have been gained by additional permitting requests and thus Plaintiff's claim is ripe. In an April 4, 2001, letter, the FWS Daphne,

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Alabama, Ecological Services field office informed E&E that the Mississippi sandhill crane is a "highly endangered" species and expressed concern that the housing project, if located on the subject property would harm the refuge's belief that Mississippi sandhill cranes had a historic usage of Site 28, including nesting and foraging, and the impact that would result to the crane were the housing project built on Site 28. JA Tab 9, pp. JA 0085-0086. In the April 25, 2001, letter, the Refuge informed the Navy that Site 28 was within the Mississippi sandhill crane's designated critical habitat and that 45 acres of prime habitat would be lost to the housing development. .In the August 3, 2001, letter, FWS informed the Navy that a "may affect" situation existed within the meaning of Section 7 of the ESA as to Site 28. As a result of the "may affect" situation, FWS recommended the Navy request formal consultation with FWS on developing Site 28. JA Tab 11, p. JA 0092.On February 12, 2002, FWS issued its Biological Opinion ("BO") reviewing the impacts of the Navy's proposed housing development on Site 28 to the Mississippi sandhill crane, in which FWS reiterated that mitigation would be required for development. JA Tab 1, pp. JA 0001-0019.

The Government should now be estopped from arguing that Plaintiff's claim is not ripe. Schooner Harbor had to rely on statements by the Government that sandhill cranes would be harmed, the Government should not be allowed to now argue that additional steps must be taken before Schooner Harbor's claim may be brought. The doctrine of equitable estoppel is based upon fundamental notions of justice and fair dealing. *O'Neill v. O'Neill*, 551 So.2d 228, 232 (Miss.1989). The O'Neill Court has identified two elements that must be satisfied in order for the doctrine to be applicable: "(1) that he [a party] has changed his position in reliance upon the conduct of another; and (2) that he has suffered detriment caused by his change of position in reliance upon such conduct." Id. at 232 (citing *PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss.1984)). Schooner

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

Harbor changed its position in reliance upon the Government that a taking of cranes would occur and would suffer detriment if such reliance would now preclude Schooner Harbor's claim from proper redress. Once Schooner Harbor was advised that harm to sandhill cranes would occur from development of the subject property, the permissible uses of the property were known to a reasonable degree of certainty, and a takings claim would have ripened. Further permit applications were not necessary to establish this point.

## VI. CONCLUSION

There was no limitation to the fee simple ownership of Plaintiffs. Plaintiff had a compensable property interest in its ownership of the property in this matter, and should be compensated for the loss of its investment backed interest. The Defendant is unable to support its claim that Plaintiff did not have a compensable property interest, as it is assumed in Mississippi deeds that title is fee simple without any restrictions, unless the restrictions are clearly stated upon the face of the deed. As the Defendant has painstakingly pointed out in its Motion, no such language is included. As there is not a restriction on the right of alienation in the deed, the Plaintiff had an unfettered compensable property interest which was taken by the Defendant by its requirement to purchase mitigation land in order to sell the property. It was that right of alienation which was taken from Schooner Harbor for which Schooner Harbor is due just compensation.

Respectfully submitted, this the 7th day of December, 2007.

**SCHOONER HARBOR VENTURES, INC.**
**Plaintiff**

**By:** ______________________________
**WILLIAM LEE GUICE III**
**MS BAR NO. 5059**

RUSHING & GUICE, P.L.L.C.
ATTORNEYS AT LAW
P.O. BOX 1925
BILOXI, MS 39533-1925
228 374-2313

**RUSHING & GUICE, P.L.L.C.**
**P. O. BOX 1925**
**BILOXI, MS 39533-1925**
**228-875-5263 VOICE**
**228-875-5987 FAX**

**CERTIFICATE OF SERVICE**

I, William Lee Guice III, attorney for Plaintiff, hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

JAMES D. GETTE, ESQ.
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION
NATURAL RESOURCES SECTION
POST OFFICE BOX 663
WASHINGTON, DC 20044-0663

So certified, this the 7th day of December, 2007.

**WILLIAM LEE GUICE III**