UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SCHOONER HARBOR VENTURES, INC., | |
| Plaintiff, | |
| | No. 06-87 L |
| v. | |
| | Honorable Marian Blank Horn |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. Introduction . . . . . . . . . . 1

II. Argument . . . . . . . . . . 4

A. Plaintiff Does Not possess a Property Right to Alienate Its Property to a Specific Buyer Without Conditions . . . . . . . . . . 4

B. Defendant has not Taken Plaintiff's Right to Alienate Its Property . . . . . . . . . . 8

C. Plaintiff's Claim of a Taking of Its Development Rights Is Not Ripe for Adjudication, Is Speculative and Is Simply Inaccurate . . . . . . . . . . 11

III. Conclusion . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

Alaska Airlines, Inc. v. Johnson
8 F.3d 791 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

American Pelagic Fishing Co. v. United States
379 F.3d 1363 (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005) . . . . . . . . . . . . . . 4,5

Anderson v. Liberty Lobby, Inc.
477 U.S. 242(1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Colvin Cattle Co. v. United States
468 F.3d 803 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Conti v. United States
291 F.3d 1334 (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003) . . . . . . . . . . . . . . . . 4

Dukes v. Crumpton
103 So.2d 385 (Miss. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

First Nat. Bank of Ariz. v. Cities Service Co.
391 U.S. 253 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hughes Commc'ns Galaxy, Inc. v. United States
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

J&E Salvage Co. v. United States
36 Fed. Cl. 192 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Knieper v. United States
38 Fed. Cl. 128 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Maritrans v. United States
342 F.3d 1344 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Members of the Peanut Quota Holders Ass'n, Inc., v. United States
421 F.3d 1323 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 2967 (2006) . . . . . . . . . . . . . . . 5

Mullins v. Ratcliff
515 So.2d 1183 (Miss. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Penn Central Transp. Co. v. City of New York

438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sun Oil Co. v. United States
572 F.2d 786 (Ct. Cl. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

System Fuels, Inc. v. United States
78 Fed. Cl. 769 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATUTES

16 U.S.C. § 1536(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16 U.S.C. § 1536(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16 U.S.C. § 1539(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16 U.S.C. § 1539(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16 U.S.C. §1539 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
16 U.S.C.A. §1531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
42 U.S.C. § 4321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

RULES

RCFC 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

On October 11, 2007 the United States filed Defendant's Motion for Summary Judgment and Supporting Memorandum arguing that Plaintiff's Fifth Amendment takings claim should be dismissed because Plaintiff does not possess a protected property right and cannot, as a matter of law, establish that it suffered a regulatory taking of its property under Penn Central Transp. Co. v. City of New York, 438 U.S. 104 (1978). On December 7, 2007 – following a status conference in which the Court requested that the parties, for now, focus solely on the issue of whether Plaintiff possesses a compensable property interest – Plaintiff filed its Partial Response to Defendant's Motion for Summary Judgment ("Pls. Opp."). The United States, similarly limited to the issue of a compensable property interest, herein replies.[1/]

## I. INTRODUCTION

In its opposition to the United States' Motion for Summary Judgment, Plaintiff identifies two sticks in its bundle of alleged property rights that it argues were taken by the United States: "Plaintiff has the right to sell and develop the Property." Pls. Op. at 1 (emphasis added). However, Plaintiff attempts to stretch its right to alienate its property into the right to sell its property to a specific buyer, for a specific purpose, at a specific price. Plaintiff possesses no property interest which allows it to sell to whomever it selects at a price of its own choosing for

[1/]The other arguments presented by the United States in its Motion for Summary Judgment relate to whether Plaintiff can, as a matter of law, prove a taking under Penn Central. The United States respectfully reserves the right to present these issues to the Court for consideration at a later date, should it be necessary to do so.

a defined purpose. Having struck a deal with the Navy and having already received the negotiated consideration, Plaintiff may not now claim that it had a right to sell the property to the Navy without terms the Navy specifically negotiated. Put simply, Plaintiff's right to alienation does not stretch this far. As such, Plaintiff's takings claim must be dismissed.

Moreover, the undisputed facts of this case are that Plaintiff has, in fact, sold its property in an arms length transaction to the United States at a substantial profit. The only complaint Plaintiff can muster, then, is that the purchaser of its property, the Navy, included a term in the contract that required Plaintiff to provide more property than Plaintiff initially intended to convey. Of course, specific terms or conditions often change as commercial transactions develop. The parties can either accept the revised terms and proceed with the transaction, or reject the revised terms and walk away from the deal. Certainly, when acting in its proprietary role as a purchaser of property, the Navy, just as any contracting party, is fully entitled to place conditions on its purchase of property. The seller can then accept the deal or reject it. In this case, Plaintiff, the seller, accepted the deal and should be bound by it. Plaintiff may be suffering from seller's remorse,[2/] but its property has not been taken without just compensation.

Any claim that Plaintiff's right to develop its property has been taken as a result of the Endangered Species Act ("ESA") is not ripe for adjudication. Private development can proceed regardless of the ESA as long as the development will not result in the take of a listed species. If a private developer is concerned that development may impact a listed species, it can still seek an incidental take permit for its development under Section 10 of the ESA. Unless and until

[2/]Having netted over $1 million in less than two-and-a-half years on a $1.3 million investment in 82 acres of property (see infra note 6), it is unclear why the Plaintiff has any remorse at all.

such a permit is sought and acted upon, there is no trigger for the government, through the United States Fish and Wildlife Service ("FWS"), to analyze the proposed development to determine whether and to what extent a species may be impacted, and whether it is appropriate to issue an incidental take permit. Because no incidental take permit was ever sought by Plaintiff or any potential third party purchaser, any claim of a taking of the right to develop the property because of constraints imposed by the ESA is premature and is not ripe for adjudication.

Moreover, any guess work by Plaintiff regarding the potential outcome of an application for an incidental take permit is pure speculation and cannot be relied upon by this Court. With respect to Plaintiff's alleged right to develop the property, Plaintiff suggests that seeking another buyer would have been futile because the Biological Opinion placed limitations on Plaintiff's or a third-party buyer's ability to develop the property. Plaintiff, however, fundamentally misunderstands the import of a Biological Opinion issued by the FWS under Section 7 of the ESA. Since Section 7 applies only to governmental entities, any mitigation measures identified in the Biological Opinion were placed on the Navy, not on Plaintiff or any other non-governmental purchaser of the property.

Plaintiff has also failed to offer any record evidence to support its claim that sales of the property would have been futile. In fact, the only record evidence is to the contrary. Long after the designation of the Mississippi sandhill crane as endangered and long after the designation of the property as critical habitat, Plaintiff sold three sections of the larger parcel to private parties, all of whom developed their properties without restriction from the federal government. Joint Statement of Facts ("JSF") p. 4, nos. 23-26; Joint Appendix ("JA") Tab 4, pp. JA0042-43; JA

Tab 5, p. JA0073. Moreover, after the sale of the remaining property by Plaintiff to the Navy, that property was also developed into family housing. JSF p. 11, no. 72.

Plaintiff has failed to demonstrate that a claim for the taking of its right to develop the property is ripe for adjudication. It also has failed to demonstrate that any effort to sell the property to a third party would have been futile or, if sold, that the mitigation measures under the FWS's Biological Opinion would have been applicable to a private entity's development of the property. Plaintiff has also failed to demonstrate that it possesses the right to sell its property to a specific buyer, at a specific price, without limitations, and for a specific use. For all of these reasons, this case must be dismissed.

## II. ARGUMENT

### A. Plaintiff Does Not Possess a Property Right to Alienate Its Property to a Specific Buyer Without Conditions

In its opposition, Plaintiff misapprehends the United States' argument as suggesting that Plaintiff does not possess the right to alienate its property. Thus, Plaintiff spends the bulk of its argument attempting to prove that it "held [a] right of alienation in the subject Property." Pls. Opp. at 5-6.[3] The United States does not contest that Plaintiff had a right to alienate its property.

---

[3] Plaintiff argues that "[t]he Government seeks to have Schooner Harbor prove that it had a right to sell the property without limitation; however, the burden is on the Government to show that the right is restricted." Pls. Opp. at 5. As with numerous assertions in Plaintiff's brief, this statement is made without citation to legal authority. Moreover, it is an incorrect statement of the law. The Federal Circuit has repeatedly said that the burden of proving the existence of a compensable property interest rests with the claimant. See Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005) ("If the **claimant** fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end")(emphasis added); Maritrans v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003) ("First, a court must evaluate whether the **claimant** has established a 'property interest' for purposes of the Fifth Amendment.") (citation omitted)(emphasis added); Conti v. United States,
(continued...)

The right to alienation does not stretch, however, to the point of allowing a property owner to force a sale on a specific buyer without conditions. Plaintiff claims in this case, without citation to legal authority, that "[t]he state of the law in Mississippi is that Schooner Harbor had the right to sell without limitation ***unless*** express words limited that right." Pls. Opp. at 5 (emphasis in original). In reality, as the Federal Circuit has stated numerous times, while a property owner possesses the right to alienate its property, it does not possess a right to derive a specific benefit from its property or put the property to a specific use. See Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005) (plaintiff not entitled to put his fishing vessel to a specific use); Colvin Cattle Co. v. United States, 468 F.3d 803 (Fed. Cir. 2006) (no right to graze inherent in a water right). In all commercial transactions, the buyer has every right to negotiate the terms of the sale, which the seller can accept or reject as it sees fit. Here, Plaintiff, by asserting the right to sell to the Navy without limitation, attempts to upend this time-honored business process. In short, the right to alienation is not a guarantee of alienation to a specific buyer, at a specific price, for a specific purpose as Plaintiff argues.

Moreover, none of the cases cited by Plaintiff support such an expansive reading of the right to alienation.[4/] In Mullins v. Ratcliff, 515 So.2d 1183 (Miss. 1987), the grantor made inter

---

[3/](...continued)
291 F.3d 1334, 1339 ("However, if a **claimant** fails to demonstrate that the interest allegedly taken constituted a property interest under the Fifth Amendment, a court need not even consider whether the government regulation was a taking under the analysis set forth in Penn Central.")(emphasis added).

[4/]Contrary to Plaintiff, the United States cited to several cases that hold that an owner does not have a right to derive specific benefits from their property. See Members of Peanut Quota Holders Ass'n, Inc., v. United States, 421 F.3d 1323, 1334-35 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 2967 (2006); Am. Pelagic Fishing Co., 379 F.3d at 1377; Colvin Cattle Co. v. United States, 468 F.3d 803 (Fed. Cir. 2006). Plaintiff suggests that the cases cited by the United States (continued...)

vivos gifts of his property to one of his sisters who also acted as his guardian as a result of a physical handicap. On the grantor's death, several of his other sisters contested and attempted to reverse the transfers. In ruling that the transfers were valid, the court held that the grantor had the legal authority as well as the mental capacity necessary to convey the property as he "desire[d]." Id. at 1190. Unlike the instant case, Mullins did not address the issue of whether a seller possesses the right to alienate without limitations negotiated by a buyer in an arms length transaction. Instead, it addressed the question of whether a holder can be prevented from transferring its property in the first instance. Here, unlike in Mullins, no one attempted to prevent Plaintiff from transferring its property. Indeed, as laid out more fully below, Plaintiff freely sold its property to willing buyers in four separate transactions. See infra § II.B., pp. 8-10.

Similarly, in Dukes v. Crumpton, 103 So.2d 385, 388 (Miss. 1958), the Mississippi Supreme Court did nothing more than support the proposition that alienation is a right incident to property ownership. This, however, is not in dispute between the parties. The Dukes case sheds no additional light on the claim raised by Plaintiff. Contrary to Plaintiff's overly broad reading of the Dukes case, the Mississippi Supreme Court did not hold that a property owner has the right to alienate its property to a party of its choosing, without condition, for a purpose of its choosing. The Dukes case simply does not address the issue in the instant case: whether a

---

[4/](...continued)
are inapposite because they involve personal and intangible property rather than real property. First, Plaintiff addresses only two of the cases cited by the United States and ignores Colvin Cattle, a case that addresses whether grazing rights are inherent in the ownership of a ranch (i.e., real property) and related water rights. Id. at 806. In Colvin Cattle, the plaintiff did, in fact, allege a taking of its real property. Second, Plaintiff fails to explain why this distinction is of consequence. In fact, the nature of the property – real, personal, or intangible – does not alter the proposition that a property owner does not have an unfettered right to derive specific benefits from its property.

grantor can claim a taking of its property when it determines that it dislikes a negotiated term of a completed contract for sale.

Nothing in the cases cited by Plaintiff allows it to stretch the right to alienation to the point of forcing a buyer to complete a transaction that does not meet the buyer's needs. In this instance, there was a restriction on the Navy's use of the property. See Biological Opinion ("Bi.Op."), JA Tab 1. That restriction, however, was limited to the Navy (id. passim and see infra fn. 9) and limited to a specific development project (id. at JA0001 and see infra fn. 10).

Moreover, the Navy, while operating in its proprietary capacity, had every right to negotiate for the inclusion of terms in the contract for sale just as any other purchaser on the open market. As this court has held, the government should be treated like any other entity when acting, such as in the instant case, in its proprietary capacity as a contracting party. As such, takings claims generally do not apply when rights are voluntarily created by contract. System Fuels, Inc. v. United States 78 Fed.Cl. 769, 809 (2007) (citing Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 572 F.2d 786, 818 (Ct.Cl. 1978)) ("The United States Court of Appeals for the Federal Circuit has held that when the Government acts as a contractual partner in a commercial venture, the rights and responsibilities of the parties must be analyzed with reference to the contract: 'The concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.' Therefore, takings claims 'rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its

sovereign capacity.'") (internal citations omitted). Indeed, when the government acts in its proprietary capacity rather than its position as sovereign by entering "the domain of commerce" it is treated just as any other contracting party. "As a consequence, a takings claim cannot be based on the Government's acting in its proprietary capacity." J&E Salvage Co. v. United States, 36 Fed. Cl. 192, 195 (1996) (citing Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 798 (Fed. Cir. 1993).

There is no right to sell one's property to the United States and certainly no right to sell at a pre-determined price without limitations. Here the United States Navy negotiated a purchase of Plaintiff's property. Plaintiff had two options: sell the property based upon the negotiated terms or retain the property for its own use or future sale to some third party. There was no right to sell to the Navy and then claim that it was entitled to a better deal. Because Plaintiff does not possess the expansive property right it claims, Defendant's Motion for Summary Judgment should be granted and the case dismissed.

### B. Defendant Has Not Taken Plaintiff's Right to Alienate Its Property

In its Opposition, Plaintiff reiterates that it "desired to sell the 75 acre Property to the United States of America and the United States Navy, to be used for [a] housing project." Pls. Opp. at 1.[5] Even if Plaintiff possessed a right to sell its property to a specific buyer for a project

---

[5]This assertion, like many others, was included in a section of Plaintiff's brief entitled "FACTS." Contrary to its title, the section generally, if not entirely, consists of argumentative statements and legal assertions, rather than facts. Moreover, not a single citation to the record is included in the entire "FACTS" section of the brief. For example, in its "FACTS" section, Plaintiff states that "Plaintiff was required to sacrifice all economically beneficial use of the Property in the name of the common good." Pls. Opp. at 2. Not only is this supposedly "factual" statement made without citation, but it is patently false. In reality, Plaintiff sold its Property for a sizable (continued...)

of its choosing, which it did not, the facts here demonstrate that Plaintiff did in fact achieve its objective of selling the property to the Navy for use as a housing project. JSF p. 10, nos. 63-66, 72. In the end, Plaintiff received exactly what it desired: a sale to the Navy for family housing. Moreover, Plaintiff accomplished its stated goal at a substantial profit of over $1 million on an investment of less than $1.3 million.[6/] Given these facts, there simply has been and can be no taking.

Plaintiff sold its property in an arms length transaction at a substantial profit. Thus, Plaintiff's right to alienate its property was never impacted. This conclusion is also supported by the fact that Plaintiff was able, long after the designation of the Mississippi sandhill crane as endangered and long after the designation of the property as critical habitat, to sell portions of the property to three non-governmental entities. JSF p. 1, no. 1; p. 2, nos. 7-8; and p. 4, nos. 23-26. None of the sales to private third-parties were subjected to mitigation under the ESA, nor

[5/](...continued)
profit to three private entities and the Navy, all of whom subsequently developed the properties. See infra note 6.

[6/]A quick accounting based upon the Joint Statement of Facts (see JSF nos. 17, 23-25,65-67, 69) demonstrates the following:

| | | | |
|---|---|---|---|
| REVENUE | Sale of 8.15 acres to three private parties | $430,000.00 | |
| | Sale of remaining property to Navy | $1,900,000.00 | |
| | TOTAL REVENUE | | $2,330,000.00 |
| COSTS | Initial purchase of 82 acres by Plaintiff | 963,802.51 | |
| | Purchase of mitigation parcel by Plaintiff | 300,000.00 | |
| | Incidental costs related to mitigation parcel | 14,406.65 | |
| | TOTAL COSTS | | $1,278,209.16 |
| PROFIT | | | $1,051,790.84 |

were any additional restrictions placed on the Plaintiff as the seller or on the private purchasers. Plaintiff was repeatedly able to alienate its property without interference.

In the instant case, Plaintiff is attempting to undo its arms length transaction with the Navy under the guise of the Fifth Amendment's Just Compensation Clause. Plaintiff, an experienced property development company, chose to sell property at a substantial profit to the United States Navy. As part of the negotiations leading to the sale, the Navy requested and received an agreement by Plaintiff to include an additional tract of land in return for a negotiated sale price of $1.9 million that provided Plaintiff with a sizable profit. JSF p. 10, no. 65. Given the substantial profit made by Plaintiff, even accounting for the additional tract of land purchased for mitigation, there is no reason to believe that the agreement here did not adequately compensate Plaintiff for the property. Despite this fact, Plaintiff is now before this Court arguing that its substantial profit is not enough and that it somehow has a right to receive more than what it negotiated in an arms length deal.

In short, Plaintiff confuses the right of alienation with a guarantee of alienation. Nothing restricted Plaintiff from selling the property. Indeed, Plaintiff accepted an offer, sold the property, and received the negotiated consideration. Plaintiff attempts to convert the right to alienate into a right to receive a certain price for sale to a specific owner. No property interest, not even fee simple title, however, provides such a guarantee and Plaintiff has cited no authority to support such a broad reading of the right to alienation. As such, Plaintiff's Fifth Amendment takings claim must be dismissed.

**C. Plaintiff's Claim of a Taking of Its Development Rights Is Not Ripe for Adjudication, Is Speculative and Is Simply Inaccurate**

Because plaintiff has not and cannot provide a single piece of evidence to suggest that private development on the Property was ever the subject of an application for an incidental take permit under Section 10 of the ESA, any claim of a taking of Plaintiff's development rights is not ripe for adjudication. Liability under Section 9 of the ESA, for take of a listed species, can be prevented where: (1) take of the species is avoided altogether; (2) a State, local, or private entity obtains an "incidental take permit"[7] under Section 10 of the ESA (16 U.S.C. § 1539(a)(1)(B)); or (3) a federal agency or non-federal applicant[8] complies with the terms of an "incidental take statement" issued as part of a consultation under Section 7 of the ESA (Id. §§ 1536(a)(2) and (b)(4)). As the ESA makes clear, Section 7 consultations apply only to governmental actions (i.e. actions by federal agencies or limited non-governmental projects that have a clear federal nexus). Id. § 1536(a)(3). As such, the incidental take statement issued by the FWS to the Navy under Section 7 did not address the scope of private development by Plaintiff or any private third-party purchaser.[9] Instead the Biological Opinion was specific to the

[7] Pursuant to Section 10 of the ESA, a party seeking an incidental take permit must develop a "habitat conservation plan" that provides measures that both minimize a project's impact on listed species and mitigates for such impact. 16 U.S.C. § 1539(a)(2). The incidental take permit authorizes the take of a listed species that incidentally results from lawful activities. Id. § 1539(a)(1)(B).

[8] Non-federal entities may seek Section 7 consultation only if a sufficient federal nexus exists with the proposed project. As part of deciding whether to issue an incidental take permit, the FWS is required to prepare a Biological Opinion in which it analyzes the proposed action to determine whether the impacts will result in jeopardy to the species. See 16 U.S.C. § 1536(a)(3).

[9] Indeed, the FWS's Biological Opinion is replete with references that indicate that any obligations pursuant to the incidental take statement were being imposed specifically on the (continued...)

Navy's proposed federal action[10] and cannot be expanded by speculation to conclude what private development on the property would or would not be permitted.

As set forth above, any private developer could avoid liability under the ESA simply by avoiding take of the species. In fact, no incidental take permit or incidental take statement would be required under Section 10 or Section 7 of the ESA if the development was "not likely to adversely effect" a listed species and, in this instance, the Mississippi sandhill crane. If, however, Plaintiff or a third party purchaser wanted to increase their level of assurance that no liability would be visited upon them under the ESA, they were free to submit an application for an incidental take permit under Section 10 of the ESA. No application for an incidental take permit was ever submitted by Plaintiff or any potential third party purchaser. See JSF p. 4, no. 21. Any claim that Plaintiff's right to develop the property has been taken could not ripen unless and until Plaintiff submitted (and the FWS acted upon) an application for an incidental take permit under Section 10 of the ESA. See Defs. Mot. for Sum. Judg. at 24 and cases cited therein. Because no such application has ever been submitted with respect to Plaintiff's Property, any claim for a taking of the right to develop the Property is not ripe and must be dismissed.

---

[9](...continued)
Navy, not any other individual or entity. See Bi.Op., JA Tab 1, p. JA0014 ("The measures described below . . . must be implemented by the Navy. . . ."); Id. JA0014-15 (". . . the Navy must report the progress of the action and its impact on the species. . . ."); Id. JA0015 ("The [FWS] believes that the following reasonable and prudent measures by the Navy are necessary and appropriate. . . .").

[10]Not only was the Section 7 consultation narrowly focused on the Navy, but the proposed action was also very specific and narrowly defined: "This biological opinion is based on the *Environmental Assessment for the Proposed Construction of 188 Family Housing Units at Naval Station Pascagoula*. . . ." JA Tab 1, p. JA0001.

Moreover, any suggestion that an application for an incidental take permit would be futile is pure speculation.[11] The Biological Opinion at issue in this case analyzed the impact only of a specific governmental (i.e. Navy) development of the property for a specific purpose (i.e. a military housing project with 188 units). Nowhere did the Biological Opinion venture into the feasibility of private development on the property for any other uses. Plaintiff admits as much when it acknowledges that the mitigation requirements in the Biological Opinion only applied "in order to sell property to the Navy. . . ." Pls. Op. at 10 (emphasis added).

---

[11] Plaintiff asserts a litany of allegedly contested issues of material facts speculating on the likely success or failure had Plaintiff applied for an incidental take permit and suggests that these speculations, costumed as facts, preclude summary judgment in this case. Pls. Opp. at 10. Simply asserting allegedly contested issues of material fact, however, does not make them so. To overcome a well plead motion for summary judgment, Plaintiff must carry its burden of coming forward with evidence to support the alleged facts and must also demonstrate that the facts are material. RCFC 56(e) (a party opposing a properly supported motion for summary judgment "may not rest upon [ ] mere allegations or denials", but "must set forth specific facts showing that there is a genuine issue for trial"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (a party opposing a well plead motion for summary judgment cannot defeat the motion "without offering 'any significant probative evidence tending to support the complaint.'" (quoting First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 290 (1968)); Id. at 247-48 ("Only dsiputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . ."); see also Knieper v. United States, 38 Fed. Cl. 128, 134 (1997) ("[d]isputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment"). Plaintiff fails to offer a single citation to the record to support its allegedly contested facts. Moreover, Plaintiff fails to cite to any law that would support its assertion that these alleged facts are material. A single example demonstrates that Plaintiff's assertions are not facts and are certainly not material. Plaintiff states that "[i]t is a contested issue of material fact if it was reasonable for Schooner Harbor after it purchased the property to not try to get approval from the government under the regulations after being informed of requirement for mitigation in the sale to the Navy." Pls. Op. at 10. First, Plaintiff fails to site any evidence in support of this alleged fact. Second, Plaintiff has failed to cite to a single decision that creates some undefined "reasonableness" exception to the ripeness doctrine. In fact, as the cases cited by the United States in its moving papers make clear, the rule on ripeness has been strictly and uniformly enforced to avoid courts engaging in just such speculation in areas that are, in the first instance, the province of the executive branch. See Defs. Mot. for Sum. Judg. at 24 and cases cited therein.

Finally, any suggestion that the Property could not be developed by or sold to private third parties is not supported by the evidence in this case. Plaintiff freely admits that several portions of the Property, which were also designated as critical habitat, were sold by Plaintiff to three third-parties who in turn developed those properties. Joint Statement of Facts ("JSF") p. 4, nos. 23-26; Joint Appendix ("JA") Tab 4, pp. JA0042-43; JA Tab 5, p. JA0073.

Because Plaintiff fails to cite a single provision from the ESA or any record evidence that supports the conclusion that the FWS has reached a final, definitive decision precluding private development of the property, this issue is not ripe for adjudication. In short, the Biological Opinion applied only to the Navy's use of the property for 188 family housing units and nothing more. The limitation on the Navy was one that Plaintiff was entitled to accept or reject through the negotiation process. If accepted, as it was, Plaintiff could move forward with the sale of the Property to the Navy at a hefty profit, which it did. If rejected, Plaintiff was entitled to break off negotiations with the Navy and pursue its own development of the Property or sale to some third party. Faced with these options, Plaintiff chose to complete the transaction. That should be the end of the story and the end of this case.

## III. CONCLUSION

Because Plaintiff lacks a right to sell the Property without limitation to a specific buyer for a specific purpose and because any claimed taking of the right to develop the Property is not

ripe, all as set forth more fully above, Defendant respectfully requests that its motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice.

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

/s/ James D. Gette
______________________________
JAMES D. GETTE
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-1461
Fax: 202-305-0267
Email: james.gette@usdoj.gov

Of Counsel:

VICKI MOTT
Department of the Interior
Office of the Solicitor
Atlanta, Georgia 30303

ALEACIA CHINKHOTA
Navy Litigation Office
Washington Navy Yard, DC 20374